BESSIE HARDY *and* WILLIAM F. DEITZ *v.* BURR H. SIMPSON, *State Road Commissioner*

(No. 8576)

Submitted March 9, 1937. Decided March 23, 1937.

*Sanders & Day* and *Walter G. Burton,* for relators.
*Clarence W. Meadows,* Attorney General, and *Forrest B. Poling,* Assistant Attorney General, for respondent.

FOX, JUDGE:

Bessie Hardy, the owner of real estate in the City of Bluefield and William F. Deitz, the owner of a mortgage or lien thereon, seek, by writ of mandamus, to compel the defendant, as State Road Commissioner, to institute condemnation proceedings to ascertain the amount of damages to said property, occasioned by the construction, maintenance and use of a primary state highway on which the property of the said Hardy abuts. No part of the property involved is actually taken, but it is alleged that the same is damaged by reason of a change in the grade of the street, rendering access thereto difficult, if not impossible, and that the ordinary processes of law afford to the plaintiffs no relief from the situation thus created.

Section 9, Article 3 of the Constitution provides:

"Private property shall not be taken or damaged for public use, without just compensation; nor shall the same be taken by any company, incorporated for the purpose of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner; and when private property shall be taken, or damaged, for public use, or for the use of such corporations, the compensation to the owner shall be ascertained in such manner as may be prescribed by general law: Provided, That when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders."

From this provision of the constitution, it is clear that private property cannot be taken or damaged for public use without just compensation; nor can it be taken for purposes of internal improvement without such compensation. There is, however, one distinction: as to property taken for public use, the compensation need not be paid before the taking. *Keystone Bridge Company* v. *Summers,* 13 W. Va. 476; while as to property taken for purposes of internal improvement the same cannot be taken "until just compensation shall have been paid or secured to be paid". In either event, the compensation shall be ascertained in such manner as may be prescribed by general law, with the right of trial by a jury of freeholders guaranteed. The property, or rights, of the plaintiffs involved herein, will be devoted to a public use, and come under that provision of the constitution which permits their taking without compensation being paid in advance of such taking. Of course, the constitution guarantees ultimate compensation, but the legislature may make reasonable provisions for the ascertainment and payment thereof. As to property actually taken, the legislature has provided for such taking in advance of payment of compensation (Code 54-2-14), but this provision contemplates a proceeding to condemn, because it provides that such proceeding may not be dismissed without the consent of the landowner. A recent act of the

legislature, Senate Bill 188, 1937 Session, and now effective, provides for the ascertainment of damages for property actually taken "after a reasonable time has elapsed for the completion of the work upon the particular property so entered upon and taken possession of." This act is mentioned as showing the legislative policy.

Damage to property, where no actual taking occurs, can stand on no higher ground than where property is actually entered upon and appropriated to a public use. True, the law contemplates a condemnation proceeding prior to actual taking, but compensation may be thereafter determined; and it may be argued that the same course should be followed with respect to property damage; but there is the difference; the value of property actually taken, and damages to the residue above peculiar benefits, can reasonably be ascertained at the time of the taking; probably a more equitable ascertainment can be made after the completion of the project for which the property is taken, and the legislative policy seems to be to delay compensation until there is a final and complete picture of the damage done, both in the actual taking and otherwise; on the other hand, the damage done to property, where there is no actual taking, arises solely from the maintenance and use of the project, (in this case a highway) after its completion. If it be said that damages to property are such as to amount to the taking of the same, the measure and extent of that taking cannot be made clear until the construction work is completed, and it is definitely known what elements of damage arise from the new situation. This reasoning more strongly applies to any character of damage less than actual taking of property. In a case of damage only, there cannot be, in the very nature of things, a reasonable basis for the ascertainment thereof, until the completion of the work out of which the same arises. The constitutional guaranty of just compensation for private property taken or damaged for public use should be so interpreted and applied as to do justice both to the state and its citizens, and with the revenues of the state pledged to assure to the owner of private property com-

pensation for any property taken or damaged, he is not legally prejudiced by any interpretation of the constitution and statutes which does nothing more than provide for the ascertainment of such damages under conditions designed to bring about the most nearly correct finding of actual damages possible.

If, after the completion of the project described in the petition, the plaintiff, Hardy, is able to show damage to her property, her right to compensation is clear. *Guinn* v. *Ohio River Rr. Co.*, 46 W. Va. 151, 33 S. E. 87, 76 Am. St. Rep. 806; *Watson* v. *Fairmont & S. Railway Co.*, 49 W. Va. 528, 39 S. E. 193; *Cline* v. *Norfolk & W. Rr. Co.*, 69 W. Va. 436, 71 S. E. 705; *Jones* v. *Clarksburg*, 84 W. Va. 257, 99 S. E. 484; *Swift & Co.* v. *Newport News*, 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404; *Tidewater Ry. Co.* v. *Shartzer*, 107 Va. 562, 59 S. E. 407, 17 L. R. A. (N. S.) 1053. These cases, for the most part, cover allowances of damages against private corporations, but they illustrate the principle. But such compensation for damages to property less than the actual taking is not required to be paid in advance of the construction of the work out of which the right to compensation arises. *Mason* v. *Harper's Ferry Bridge Co.*, 17 W. Va. 396; *Spencer* v. *Point Pleasant & O. Rr. Co.*, 23 W. Va. 406; *Arbenz* v. *Wheeling & H. Rr. Co.*, 33 W. Va. 1, 10 S. E. 14, 5 L. R. A. 371; *Watson* v. *Fairmont & S. Ry. Co.*, *supra.* In such cases, where there are peculiar benefits to the property, the same may be set off against damages. *Jones* v. *Clarksburg, supra; Town of Galax* v. *Waugh*, 143 Va. 213, 129 S. E. 504. Where work is being done under, and within, legal authority, the progress of the same cannot be enjoined because of consequential damages. *Spencer* v. *Pt. Pleasant & O. Rr. Co., supra; Arbenz* v. *Wheeling & H. Rr. Co., supra; Watson* v. *Fairmont & S. Ry. Co., supra; Dick* v. *Hinton*, 109 W. Va. 708, 156 S. E. 81. Under the constitution, and the decisions of this court, interpreting the same, a suit cannot be maintained against the state, or its instrumentalities, to recover damages growing out of such work. Constitution, Article VI, Section 35; *Mahone* v. *State Road Commission*, 99 W. Va. 397, 129 S. E.

320; *Stewart* v. *State Road Commission,* 117 W. Va. 352, 185 S. E. 567.

This leads us to a consideration of the rights of the landowner in a case such as is presented here. That she has rights, and that some way should be found to enforce them is clear; the plain provision of the constitution, with respect thereto, cannot be ignored. If the landowner cannot sue the road commission to recover damages; if she cannot resort to the remedy of injunction to protect such rights; and if she has no other remedy; the plain provisions of the constitution are nullified. This cannot be. Courts are always jealous of the rights of private citizens when such rights clash with the power of the state. While our statutes, covering the taking of private property under the powers of eminent domain, only apply, in direct terms, to the actual taking of property, these provisions must be held, in order to give effect to the constitution, to cover cases where there is damage to property, as distinguished from the actual taking thereof. Therefore, a duty rests on the state to take necessary steps under our condemnation statutes to ascertain damages to the owners of private property, whether the same is actually taken, or damaged only.

There is authority for the proposition that the Road Commissioner, in person, may, by mandamus, be required to institute condemnation proceedings. *Stewart* v. *State Road Commission, supra; Haycock* v. *Jannarone,* 99 N. J. L. 183, 122 A. 805; *Goodavage* v. *State Highway Commission,* 96 N. J. Eq. 424, 125 A. 919; *Thomson* v. *State Highway Commission,* 10 N. J. Misc. 877, 161 A. 192; *McDowell* v. *Ashville,* 112 N. C. 747, 17 S. E. 537; *Gibson* v. *Greenville,* 64 S. C. 455, 42 S. E. 206; *Worley* v. *Road Commissioner,* 172 N. C. 815, 90 S. E. 1003; *Ex Parte Jennings,* 6 Cow. (N. Y.) 518, 16 Am. Dec. 447. We have found no authority fixing the time when such proceeding shall be instituted.

In view of these authorities, and what seems to us the imperative duty to give full effect to the constitutional provision involved herein, we conclude that the Road Commissioner may be required to institute such pro-

ceeding as may be necessary to ascertain and pay proper damages to property owners where their property is either taken or damaged; but the commissioner has a reasonable discretion as to the time when such proceeding shall be instituted, in cases of property damage only; and where, as in this case, the work is being pushed to completion, and there is no evidence of undue delay, the postponement of such proceeding until after the completion of the work, when the ascertainment of damages, if any, can be made under circumstances calculated to protect the interests of all concerned, cannot be held to be an abuse of such discretion. Upon completion of the work, the Road Commissioner should, within a reasonable time thereafter, take the necessary steps to ascertain of the damages, if any, to which petitioners may be entitled; and should he fail to do so, such failure will be considered such an abuse of discretion, and neglect of duty as to warrant the use of the writ of mandamus to compel such action.

The peremptory writ is refused.

*Writ refused.*

KENNA, PRESIDENT, concurring:

It seems to me that the rule established by this case, if carried to its logical conclusion, is bound to result in the serious impairment of Section 35 of Article VI of our Constitution providing that the State of West Virginia shall not be made a party defendant in "any court of law or equity." It seems to me that there is no substantial difference between making the State of West Virginia a direct defendant in an action for damages upon the one hand, and saying to the State of West Virginia that it must initiate a condemnation case in which damages may be collected against it on the other hand. This court has repeatedly denied the power of the Legislature to give consent that the state be sued, yet we are here taking unto this court the right to exercise the very power that we deny to the legislative branch, because we are, by mandamus, requiring that the state submit to a judgment

against it. Furthermore, the doctrine, it seems to me, once established, must logically be extended to all sorts of cases if it is to be accepted as a device which will prevent the taking or damaging of private property for public use without just compensation. Whenever property is involved, mandamus may be invoked to require the state to submit itself to the jurisdiction and judgment of the courts, and this court, through its constitutional grant of original jurisdiction in that proceeding, will be made the forum which will become virtually a court of claims to determine, from the merits of the various claims presented, when the state must and when the state need not, by bringing a condemnation proceeding, subject itself to what, in fact if not in form, amounts to a damage suit against it. Nor do I think that it is necessary to establish such a doctrine in order to meet any acute need for the further protection of private property.

If the agents of the state, or rather the individuals who occupy the positions of state agents, are engaged in the wrongful appropriation of private property or in damaging it, they, as individuals exceeding their rightful powers, may be enjoined, and a summary end put to the abuse. Of course, the plaintiff must approach an injunction suit with caution, and I am not suggesting that in ordinary instances it may be accepted as a substitute for mandamus. We are not, however, dealing with the question of whether mandamus may be brought in spite of the existence of a remedy by injunction, but are simply discussing the remedies available for the protection of private property, regardless of mandamus. It is true that in an injunction suit, the plaintiff will be required to give a bond, and that there may be risk entailed in that. I see no reason, however, why the state should not be entitled to this much protection in order that its officers may not be subjected to harassment and interference by the advancing of frivolous and negligible claims. I subscribe to the notion expressed in the majority opinion to the effect that damages should not be required to be ascertained until after the work is completed, but I do not subscribe to the idea that the state

should not be required to bring its condemnation proceedings at the beginning of its work. I think that the state's agents should be subject to injunction as individuals acting beyond the scope of their public employment wherever, without the bringing of an appropriate proceeding, they undertake to appropriate or to damage the property of a citizen. When a proper proceeding is first brought, the state is acting rightfully through its agents. When that is not done, the individuals are acting wrongfully and not for the state. The courts should stop them by injunction. The person who wants them stopped should be willing to give an injunction bond as proof of his *bona fides* and of the materiality of his case.

Without taking time to criticize them in detail, I suggest with all deference that examination discloses that the cases depended upon in the majority opinion to sustain the proposition that mandamus will lie to compel the state to bring a condemnation proceeding are not from jurisdictions which have constitutional provisions like our own prohibiting the making of the state a party defendant. I think, therefore, that those cases, with the possible exception of the rather obscure New Jersey cases, have no application here, and render no aid in the solution of the problem before us.

The time-honored maxim that the law will not permit to be done indirectly what may not be directly done, it seems to me, is very seriously impaired by the doctrine laid down in the majority opinion. To hold, on the one hand, that the State Road Commissioner may not be sued as defendant because he is an arm of the state, and then on the other hand to hold that he may be forced by mandamus to go, as plaintiff, into a condemnation proceeding where a verdict and judgment may be rendered against him, I think destroys the maxim in this instance and throws doubt upon its force in all other instances.

If it is desired to throw further legal safeguards about private property (and I am not convinced that that is necessary), I would a great deal rather confront the problem directly, overrule cases in which we have said that

the State Road Commissioner may not be sued and hold that an action at law will lie against him. It has always seemed rather inconsistent for this court to hold that the construction and maintenance of roads, when constructed and maintained by the State Road Commissioner, constitutes a governmental activity, and for that reason that the State Road Commissioner is an arm of the state in the construction and maintenance of roads, in the light of the many, many cases in which we have held that the Legislature could grant the right to sue county courts as to matters growing out of the construction and maintenance of public roads, thus treating the construction and maintenance of public roads as not being a governmental activity, for if it were, the Legislature, under our constitution, could not create the right to sue respecting it. The early opinions of this court are not plain upon this question. Some of them indicate that the Legislature could create the right to sue a county court in a cause of action growing out of the construction and maintenance of public roads in spite of the fact that in that connection county courts acted in their sovereign capacity as an arm of the state, and in spite of the further fact that our constitution prohibits suits against the state. This anomalous theory seems to have been first advanced in *Watkins* v. *County Court*, 30 W. Va. 657, 5 S. E. 654, decided in 1888. The court in that case seems to have been much impressed by the reasoning of the case of *Commissioners of Hamilton County* v. *Mighels*, 7 Ohio St. 109, which held that in Ohio there is no right of action against county courts unless the Legislature creates the right to sue them. In Ohio, however, there is no constitutional provision against suing the state. The Virginia court also seems to have been much impressed by the reasoning of the Ohio case and substantially followed it in *Fry* v. *County of Albemarle*, 86 Va. 195, 9 S. E. 1004, 19 Am. St. Rep. 879. That court could safely follow the Ohio case because, like that of Ohio, the Virginia constitution contains no provision against suing the state, and hence in both states the Legislature may create the right to sue the state or a state agency for a matter growing out

of its conduct in sovereign capacity. The Legislature in this state, being restrained by the constitution, can create no such right. Of course, if public roads, in their construction and maintenance, constitute a governmental activity, then the county courts, when they were attending to them, were performing just as much of a governmental activity as is the State Road Commissioner when he attends to them, and the county courts should have been suable no more than he. And, of course, if they were not suable under our constitutional provision against making the state a party defendant, the Legislature could not confer the right to sue them. The same line of reasoning applies to municipalities. If the maintenance of city streets is a governmental activity (the great weight of authority, of course, is to the contrary), then municipalities should not be suable for any failure of theirs in that respect, under our constitution. If the constitution furnishes them protection against suits in that respect, then, of course, the Legislature could not, as they have done, impose upon municipalities absolute liability for all injuries due to their streets being out of repair. So it seems to me that, in view of the established doctrine of this state as to county courts and municipalities, we might very well have held with respect to the State Road Commissioner that in the construction and maintenance of roads he is not performing a governmental function any more than were the county courts when they did it, or, under some cases, any more than our municipalities at the present time when they do it. On this basis, it seems to me that we might very reasonably have made the State Road Commissioner suable, under our construction, because where he is not performing a governmental function he is not acting for and in the name of the State of West Virginia in its sovereign capacity. This conforms with the legislative intent because the Legislature undertook to make the State Road Commission a separate corporation which might sue and be sued.

The importance of public roads in modern times and the necessity of the state undertaking their construction

and maintenance impelled us to hold that the State Road Commission in that respect was an arm of the state (i. e. was, with respect to the construction and maintenance of roads, performing a governmental function), and therefore was not suable. If this was a mistake, I do not believe in attempting to rectify it by indirection, a word which I do not, of course, use in any opprobrious sense, but simply in its legal significance. To say that citizens may come to the Supreme Court of Appeals by mandamus every time they have a grievance, real or fancied, against the state concerning property and that this court must accord them a hearing to determine whether their claim is plain and *bona fide* so as to entitle them to mandamus, in my opinion, as I have already stated, makes this court ultimately a court of claims, because, of course, the same principle will apply to every branch of the state government, as well as to the Road Commission. Those who have plain cases will be able to get their writs of mandamus, while those whose cases are not quite so plain, but whose rights in the end may turn out to have been just as ruthlessly violated, will not be able to procure that writ. The resort to injunction, for obvious reasons will be rare.

I think that we should either begin over on this question, and, by reversing some of our former holdings, place it on a more consistent basis, or that we should hew to the line that we have already begun and say that where private property is being taken or damaged for public use without just compensation, the individuals responsible are not acting for the State of West Virginia, but are exceeding their lawful right as public officials, and as individuals are amenable either by injunction or by damage suit, to be stopped or to respond in damages. As I see it, by laying down the majority doctrine in this case we are doing neither. We are not willing to abandon the doctrine that the State Road Commissioner cannot be sued for the necessary protection of private property which may be taken or damaged without just compensation, yet we will, by mandamus, put the State Road Commissioner in such position that a verdict and judgment

may be rendered against him for the thing that he may not be sued for. It seems to me that the impossibility of consistency exists in striving to maintain these two doctrines side by side. I write this, deferentially, for the purpose of pointing this out.

For the reasons given, although I also would decline the writ and hence concur in the result, I disagree with the reasoning of the majority opinion.