O. R. CHILDERS *et al.* v. STATE ROAD COMMISSIONER

(No. 9225)

Submitted February 24, 1942. Decided March 31, 1942.

*Clarence W. Meadows,* Attorney General, *Kenneth E. Hines,* Assistant Attorney General, and *Arden Trickett,* for plaintiff in error.

*Lee, Blessing & Steed,* for defendant in error.

Fox, PRESIDENT:

Federal Route No. 35, a part of the primary road system of this State, is located in part on the north side of the Kanawha River between the Cities of Charleston and Point Pleasant, and passes through the village of Poca in Putnam County. The relators, O. R. Childers and Mollie Childers, are the owners of a lot of land in said village, fronting seventy feet on said highway route, and, according to their deed, extending back one hundred and fifty feet. The highway was established before the formation of the State of West Virginia, and was a part of the turnpike system established by the Commonwealth of Virginia. It was improved about the year 1919 by laying down a hard surface nine feet wide, and in 1939 was reconstructed and the paved portion widened. Relators claim that in this reconstruction a strip of land 11.91 feet in width, and extending along the entire front of their lot, was taken by the State of West Virginia, under a claim that such strip was a part of the right-of-way owned by the State. No compensation was paid to relators therefor. They instituted this proceeding to compel the State Road Commissioner to institute condemnation proceedings to ascertain the value of the strip of land taken, together with damages to the residue of the lot, to be ascertained according to law. The trial court awarded the writ, and the State Road Commissioner prosecutes this writ of error.

Relators acquired title to the lot in question under deed dated June 30, 1926. The lot is described as beginning at a stone on the county road, and running therewith seventy feet to a stone, and then running back one hundred and fifty feet. Relators attempt to locate the boundaries of this lot by establishing its rear line, and, measuring from said line in the direction of the county road, would if run for the full distance of one hundred and fifty feet, carry the lot into the highway, as claimed by the State, 11.91 feet. The contention of the State Road Commissioner is that the line must stop at the highway right-of-way.

At the time of the purchase of this lot by relators, there was located thereon a two-story frame building, the front of which was in line with the highway boundary of the adjoining lots on either side, and in line with the sidewalks in front of the lots on either side, one of which extended for a short distance in front of relators' property. Until the highway was reconstructed, there was no sidewalk in front of relators' lot. Some time after their purchase the relators moved the two-story building back into their lot a distance of about twenty feet, and ten feet from the highway line, as claimed by the State, gasoline pumps were installed, which are still on the lot. There is evidence that a former owner of this property set back his fence to the line now claimed by the State more than fifty years ago, and that there was an old sidewalk running along in front of the Carey property, which adjoins the property of the relators, as early as 1885, and that the same was treated as the outside boundary of the road, and substantially represents the same sidewalk which is now located in front of said properties and which has lately been extended in front of the property owned by the relators.

While the evidence as to actual dedication for highway purposes of any part of relators' lot is vague, we think it clear that, for more than fifty years, the line of the highway, as claimed by the State, has been recognized by the owners of adjoining properties, and until recently by the

owners of the property now owned by relators as the true line of the highway right-of-way. The county and State during all that period have used a portion of this right-of-way for highway purposes, and made permanent improvements thereon more than twenty years ago. Considering the character of the highway, the width thereof, at the date of the alleged dedication, is presumed by law to be forty feet. *Road Commission* v. *Coogle,* 108 W. Va. 287, 150 S. E. 719, Code 1923, Chapter 43, Section 19. *County Court of Raleigh County* v. *Coal Co.,* 103 W. Va. 386, 137 S. E. 754, is authority for the proposition that a dedication of a county-district road in the absence of proof to the contrary will be presumed to have been of a right-of-way thirty feet wide; and, of course, the same presumption would follow in the case of a primary state highway, such as Federal Route No. 35, that is, it would be presumed to be of a width of forty feet. The highway as located in front of relators' lot is forty-four feet in width, but the additional four feet was obtained by purchase from the owner of property on the opposite side thereof. Under Code, 17-1-3, " * * * any road shall be conclusively presumed to have been established when it has been used by the public for a period of ten years or more and public money or labor have been expended thereon, whether there be any record of its conveyance, dedication or appropriation to the public use or not * * *." The right-of-way has been in the possession of the county court and the State from time immemorial, and a road has always been maintained thereon. It is not necessary that every portion of said right-of-way is used and occupied, and the use of a part thereof by owners of property adjoining the same, and improvement made in order to facilitate approaches to their property does not in any way affect the right of the public. The evidence of the relators that not all of the highway right-of-way in front of their property was used by the State, and that they improved a portion thereof by using limestone chips to facilitate the approach to their own property is not important. The one question that is important is the location of the right-of-way line.

Taking all of the evidence into consideration, we are convinced that the right-of-way line was located at or near the front of the two-story building which was located on relators' lot at the time of their purchase in 1926, and, consequently, by reason of earlier dedication, the use of the right-of-way by public authorities, backed up by the statutory presumption, deprives the relators of any valid claim to any property beyond that line.

Section 9, Article III of our Constitution provides that "Private property shall not be taken or damaged for public use, without just compensation; * * *", and we have held in *Hardy* v. *Simpson, Commissioner,* 118 W. Va. 440, 190 S. E. 680, 191 S. E. 47, and *Riggs* v. *State Road Commissioner,* 120 W. Va. 298, 197 S. E. 813, that the State Road Commissioner will be compelled by mandamus to institute condemnation proceedings to ascertain damages, and compensate owners of property for the taking thereof, or damages thereto. In the two cases cited property was not taken, but was allegedly damaged. We have here a case where it is alleged that property was actually taken, and while there is a further allegation of damage on account of improper curbing, that allegation is denied, and is not sustained by proof.

Relators had a plain remedy to vindicate any rights they might choose to assert through injunction against the State Road Commissioner, or his representatives, from invading their property. *Stewart* v. *State Road Commission,* 117 W. Va. 352, 185 S. E. 567. If this remedy had been invoked, they would have been required to show title to the land affected. But they did not choose to pursue this remedy, but seek to compel the State Road Commissioner to institute condemnation proceedings to ascertain the compensation due them for the taking of property which the Commissioner contends belongs to the State of West Virginia. No such case has been heretofore presented to us. The cases we have considered have been of a character where title to the property was not in issue, and the question is, therefore, one of first impression in this State. Considering the question, we are of the opinion that the

officials of the State are entitled to survey and locate the highway rights-of-way throughout the State, however acquired, and while they are not authorized, under the guise of locating rights-of-way, to take property of private citizens, some discretion is vested in them as to the institution of condemnation proceedings. The rights of property owners are not foreclosed when public authorities refuse to condemn property, which, according to their view, is owned by the State. If a property owner would contest their position in the matter, he may do so either by injunction, or by seeking a mandamus to compel condemnation proceedings, as has been done in this case. However, if he proceeds by way of mandamus, he must show a clear legal right to the relief sought. In other words, he must show a right to the land which he asks the State to condemn and pay for superior to that of the State. In the present case we do not think relators have shown a clear legal right to any compensation for the land in question, and, failing in this their petition should have been dismissed.

The judgment of the Circuit Court of Putnam County is reversed, and the petition of the relators dismissed.

*Judgment reversed; petition dismissed.*