STATE *ex rel.* FRED GRIGGS *et al.*

*v.*

PATRICK C. GRANEY, *State Road Commissioner*

(No. 10979)

Submitted May 6, 1958. Decided June 17, 1958.

George W. May, for relators.

W. W. Barron, Attorney General, Bernard Duffy Horan, Philip G. Terrie, J. Alfred Taylor, III, for respondent.

DUCKER, JUDGE:

The petitioners as relators seek in this original proceeding a peremptory writ of mandamus directing the respondent, Patrick C. Graney, State Road Commissioner of West Virginia, to cause to be instituted a condemnation proceeding in which petitioners shall be made parties for the purpose of having ascertained and determined the damage which they claim was caused by the State Road Commission to the property of the petitioners situate in the Locust Point Farms Addition to the City of Fairmont in Fairmont District of Marion County, West Virginia. A rule to show cause having been issued, the respondent filed his answer alleging that the petitioners are not entitled to the relief which they seek in this proceeding.

The petitioners allege that they are the owners of a six room dwelling house and garage, situate on Lot Number Seventeen (17) of the Revised Plan or Plat of the Locust Point Farms Addition to the City of Fairmont, Marion County, West Virginia, fronting on the westerly side of United States Route No. 250, sometimes called "Cleveland Avenue Extension", for a distance of 76 feet, extending from said Route westerly 191 feet on the north side and 195 feet on the south side to Locust Street, along which it extends 93 feet; that U. S. Route 250 is a part of the primary road system of this State, it having been originally known as the Fairmont-Wheeling Turnpike, established by the Commonwealth of Virginia before the formation of this State; that at the time of the purchase of said property by the petitioners, with an access road thereto from Route 250, it was worth $14,000.00; that petitioners constructed and erected a retaining wall along the front part of said lot adjacent to U. S. Route 250 to protect the driveway and front lawn of their property; that on May 29, 1956, the State Road Commission tore down

and removed the retaining wall and large quantities of earth and soil from in front of petitioners' lot, thereby causing the remaining surface and soil of said lot located above and behind said wall to slip and slide, and thereby breaking and damaging the access road and driveway so that petitioners are unable to pass and repass over the same; that the front lawn of petitioners' property has slipped into the space where the earth and soil were removed; that petitioners have been damaged in the amount of $6,000.00; and that the State Road Commission has refused, after demand, to compensate petitioners for the damage and should be required to institute a proper proceeding in the matter.

The respondent answers: that he is not informed as to the facts as to the ownership by the petitioners of the property involved, but does admit that said property fronts on U. S. Route 250 and that said Route is a part of the primary road system of the State; that he admits the removal by the Road Commission of earth and soil from within the limits of its right of way at that place, but says that such work was done wholly within the right of way limits of said U. S. Route 250, denying the petition's allegations to the contrary; and that petitioners fail to show a right in any portion of the highway superior to that of the State, and are not entitled to the writ herein sought.

From the depositions taken, the facts relevant to the issue may be briefly stated as follows:

The petitioners purchased the property, namely, said Lot Number 17, from Stella E. Morgan and M. E. Morgan in 1950, shortly after the construction of the dwelling house on said lot with an access road leading from U. S. Route 250 across the adjacent Lot Number 16 to and on to said Lot Number 17. That from time to time it was necessary for the State Road Commission's employees to clean out the ditch line immediately in front of petitioners' property because of small slips and slides. The petitioners constructed in front of their property, according to their testimony, some 12 or 13 feet from the westerly edge of

the hard surface of the road and abutting on said road, a retaining wall consisting of steel rails set upright with wooden beams placed behind the rails and behind the beams a back fill of earth. Subsequently, the top of the retaining wall leaned over toward the highway, apparently from the pressure against it. On May 29, 1956, the State Road Commission's employees tore down and removed this retaining wall with the consent of the petitioners who agreed that it was necessary to do so to clean the drainage ditch, and also on that date, without the consent of the petitioners, according to their testimony, the Road Commission employees with a power shovel, flat or level with the road, removed large quantities of earth and soil from petitioners' lot back in the earth bank a distance of twenty feet from the edge of the paved surface of the highway, so that the removal of such earth left an almost perpendicular bank adjacent to the driveway, causing the driveway to crack and slip toward the highway and to become unusable, and causing large portions of the earth underneath the driveway and lawn to slip into the space from which the earth had been removed; and that the petitioners have suffered damage to the extent of $6,000.00. The evidence is not clear as to the width of the highway, the petitioners claiming it is only 30 feet and the Road Commission 40 feet. Photographs introduced by the petitioners clearly show the bad condition of the access road and the lawn of their property after the work done by the respondent.

The State Road Commission's witnesses testified that surface and other water were causing slips and slides in front of petitioners' property, and that because of such it was necessary from time to time to clean out ditch lines, and that this continued after the retaining wall had been constructed; that after the wall had leaned until it was overhanging the highway it became necessary, because of the hazard to the traveling public, to remove a portion of the bank, which they did on May 29, 1956; that they hauled away eighteen or twenty truck loads of earth, and in doing so, the shovel operator began this work by

starting at the upper edge of the lot and coming down to the lower part, but that for the operation the shovel was setting on the hard surface of the road, and as the earth was removed, more earth slipped from the bank; that the operation had to be repeated three times, but that the earth removed was only that necessary to clear the ditch for a distance not exceeding seven feet from the edge of the hard surface of the road; that the removal of the iron posts and timbers was necessary for this purpose; and that the State Road employees were at all times within the right of way limits of the forty foot wide right of way.

Complaint was made by petitioners in 1955 to the Sanitary Board of the City of Fairmont claiming damage from slippage of their property due to the construction, at a depth of three feet, of a sewer line parallel to and along the edge of the pavement of the highway nearest the petitioners' property, but liability was denied and payment refused by the City.

There appear in this case several facts which are not clearly established by the evidence, either by reason of a lack of testimony in regard thereto or a conflict in the testimony relating to the questions. It is not clearly established what the width of the right of way of U. S. Route 250 is adjacent to petitioners' property; nor is it clear as to just what extent did the respondent operate the power shovel upon or adjacent to petitioners' property. The photographs introduced by petitioners indicate clearly, we think, that the testimony of respondent's witness, the shovel operator, to the effect that some eighteen or twenty loads of earth were removed and hauled away from in front of petitioners' property, are probably accurate, and at least afford reason to believe that the lateral support of petitioners' property afforded by this earth could have been affected, and the removal of that support could have caused damage to petitioners' property. This latter phase of the case presents, in our opinion, the controlling question in determining whether the petitioners in good faith

claim probable damage to their property and are entitled to the issuance of the writ which they now seek. If such latter question alone warrants the issuance of the writ, then the condemnation proceeding will permit and require the determination of all questions which may be pertinent or necessary for an adjudication as to what rights, if any, the petitioners have; and in such a proceeding the State can make any defense which it may have as to its acts relating to this property. Such determination cannot be done in this proceeding and we do not now pass upon any questions except those hereinafter specified as necessary to the determination of the controlling question here, namely, whether in this instance a writ of mandamus should be awarded.

It should first be remembered that the petitioners are not afforded the right to institute an action against the State for their alleged grievances, and can only be afforded such right in a condemnation proceeding. In this connection the syllabus in *Hardy, et al.* v. *Simpson, State Road Commissioner*, 118 W. Va. 440, 190 S. E. 680, points 1 and 2, are as follows:

"1. Section 9, Article 3 of the Constitution which provides that 'private property shall not be taken or damaged for public use without just compensation' requires action on the part of the State, its sub-divisions or instrumentalities, to ascertain damages and compensate owners of property for the taking thereof or damage thereto, incident to any public improvement for which such property may be appropriated.

"2. Where the construction or improvement of a state highway results in damage to private property, short of the actual taking thereof, it is the duty of the State Road Commission, under Code, 54-2-14, and within a reasonable time after the completion of the work out of which such damage arises, to institute proceedings to ascertain the damage to which the owner of such property may be entitled."

And in *Riggs* v. *State Road Commissioner*, 120 W. Va. 298, 197 S. E. 813, this Court said substantially that: If a

highway construction or improvement results in probable damage to private property without an actual taking thereof and the owners in good faith claim damages, the State Road Commissioner has the statutory duty to institute proceedings within a reasonable time after completion of the work to ascertain damages, if any, and, if he fails to do so, after reasonable time, mandamus will lie to require the institution of such proceedings.

In the case of *Law* v. *Phillips,* 136 W. Va. 761, 769, 68 S. E. 2d 452, is found a discussion, which we deem material and appropriate here, of the doctrine of lateral support as enunciated by this Court:

"In *Walker* v. *Strosnider,* 67 W. Va. 39, 67 S. E. 1087, 21 Ann. Cas. 1, the leading case in this jurisdiction dealing with the common law doctrine of lateral support, this Court thoroughly considered and discussed in detail the relative rights of the owners of adjoining lands to support for such lands and the structures erected on them and the relative duties of owners of adjoining lands to protect and prevent damage to such lands and the structures erected on them. In the *Walker* case this Court held, in points 1, 2, 4, 6 and 8 of the syllabus, respectively, that 'An owner of land is entitled, *ex jure naturae,* to lateral support in the adjacent land for his soil, but not for buildings erected thereon.'; that 'An excavation, made by an adjacent owner, so as to take away the lateral support, afforded to his neighbor's ground, by the earth so removed, and cause it, of its own weight, to fall, slide or break away, makes the former liable for the injury, no matter how carefully he may have excavated. Such right of support is a property right and absolute.'; that 'An adjoining owner, excavating on his own land, must exercise reasonable care, prudence and skill, in so doing, for the safety of buildings, if any, standing on the adjacent land. This duty is enjoined, not by any right of support, *ex jure naturae,* that the owner of the building has in the adjoining land, but by a legal rule of conduct, requiring every owner of property so to use it as not to injure his neighbor's'; that ' * * * the measure of his duty goes beyond the exercise of care in making the excava-

tion, a mere incident of the alteration intended, and extends to reasonable means of temporary support of the adjacent building, while the work of erecting the new structure is in progress.'; and that ' * * * the adjoining owner is under the further duty of giving the owner of the building notice of his intention to alter the condition of his property, the character of the alteration to be made and the time thereof, and allow him opportunity to adopt such further measures for the absolute protection and security of his building as he may see fit to adopt.' "

Although there is evidence in this case substantiating the respective claims of the parties hereto, we think the evidence clearly shows that the work of the Road Commission in removing the earth to the extent of eighteen to twenty loads from either in front or from the front part of the petitioners' property justifies the petitioners in believing that the work done by the Road Commission has resulted in probable damage to their property, and although the damage may be such as is not that for which the State may be liable, the petitioners, having in good faith shown such probability, are entitled to a full judicial hearing and a determination of the question, and we are of the opinion to, and do, award to petitioners a writ of mandamus to compel the State Road Commission to institute the necessary proceedings for such purpose.

*Writ awarded.*