STATE OF WEST VIRGINIA *ex rel.* THOMAS W. MURRAY, *et al.*

*v.*

PATRICK C. GRANEY, SR., *State Road Commissioner of West Virginia*

(No. 10959)

Submitted May 27, 1958. Decided June 24, 1958.

*Jeremy C. McCamic,* for relators.

*W. W. Barron,* Attorney General, *Bernard Duffy Horan, J. Alfred Taylor, III,* for respondent.

RILEY, JUDGE:

The relators, Thomas W. Murray and Delvera Murray, his wife, hereinafter referred to as "petitioners", invoke the original jurisdiction of this Court in seeking a writ of mandamus directed to Patrick C. Graney, Sr., State Road Commissioner of West Virginia, commanding and compelling the state road commissioner to institute a proceeding in eminent domain against petitioners in the Circuit Court of Brooke County to determine and award

just compensation for a parcel of land taken by the state road commission for public use, and damages caused by the alleged taking to the residue of the land owned by the petitioners.

The petitioners are the owners of certain real property, which abuts on the right of way of State Route No. 2 on the west side thereof, immediately north of the unincorporated Village of Short Creek, Brooke County. State Route No. 2, immediately to the west of petitioners' property, is located on an embankment about fifteen feet in height.

The petitioners obtained title to their property by deed dated August 12, 1955, and have resided, and are now residing, thereon in a five-room frame house situated at the foot or toe of the embankment close to the right of way limits of State Route No. 2.

This record discloses that shortly after petitioners moved into their house, probably in 1956, small cracks appeared in the easternmost wall of the basement of the house. On the wall of the basement and on another wall, the latter of which abuts on the right of way, there is a walkway. A section of the western half of the concrete right of way of State Route No. 2 atop the embankment directly above petitioners' house had broken and sunk for some distance in length. Heavy vehicular traffic over this broken section beat the embankment downward, so as to force the bottom or toe of State Route No. 2 to move from the right of way limits of the highway on petitioners' property against the basement of the house.

Late in 1956 petitioners advised the respondent state road commissioner in writing of this condition; and by letter dated October, 1956, the respondent replied, advising petitioners that their only recourse was to file their claim "with the Claims Section of the Attorney General's office."

In the deed by which the petitioners obtained title to the property, there is the following purported release:

"This conveyance is made subject to two deeds given by the grantors herein to the State of West Virginia, by The State Road Commission of West Virginia, a corporation, for road and sewer purposes: one bearing date the 18th day of December, 1946, and recorded in the office aforesaid in Deed Book No. 88, page 248, and the other (a Deed of Correction) bearing date the 20th day of July, 1948, and recorded in the office aforesaid in Deed Book No. 95, page 471; together with a release therein contained for any and all claims for *damages* that may be occasioned to the residue of the land by the reason of the construction and maintenance of the state road over, upon and under the land therein described." (Italics supplied.)

Petitioners' predecessors in title conveyed a part of the land in question to The State Road Commission of West Virginia in 1946 for right of way purposes. Thereafter the state road commission proceeded to construct a new road upon the land so conveyed, which road was completed in 1947 and at the time of the completion no damage to the residue had occurred.

The petitioners contend and adduce evidence to the effect that by subterranean slippage the embankment on State Route No. 2 moved across the right of way line on petitioners' property and against petitioners' house. It seems that the respondent does not rely upon the purported release for damages as a defense to this proceeding.

The proceeding was instituted on the basis that there was *protanto* ouster of petitioners from their property by the movement of the toe of the embankment of the road. Whether an ouster actually occurred, however, is not material to the decision of this case, as Article III, Section 9, of the Constitution of West Virginia provides: "Private property shall not be taken *or damaged* for public use, without just compensation; * * * and when private property shall be taken, *or damaged,* for public use, * * * the compensation to the owner shall be as-

certained in such manner, as may be prescribed by general law * * *." (Italics supplied.)

In the early part of March, 1957, an extensive investigation was conducted by the state road commission, which covered several weeks. During this investigation heavy trucks, power shovels, bulldozers, and a number of men were used to ditch the eastern part of the road to a considerable depth. During and subsequent to this investigation talks were had between counsel for petitioners and representatives of respondent as to a proper settlement. An appraisal of the petitioners' house was made at respondent's expense. On May 4, 1957, several days having elapsed without petitioners having heard from respondent, petitioners wrote to respondent inquiring as to the status of the investigation. On May 8, 1957, counsel for petitioners received a telephone call from someone representing the respondent state road commissioner to the effect that "he" would come from Charleston some time within a week.

Meanwhile, some time in the latter part of May, 1957, a black top or macadam "filling" was put down on the road, thereby leveling the road at the point of the slippage, so that any danger to passing traffic would be eliminated.

The petitioners allege in their petition, a fact not controverted in this record, that this "filling" did not eliminate the danger to petitioners' house, but, on the other hand, only tended to speed up the crushing effect of the embankment against petitioners' property.

The petitioner, Thomas W. Murray, testified that, after the thaw in the spring of 1956, following a heavy snowfall during the preceding winter: "* * * the wall started to caving in, and during the winter it freezes, and sometime during that spring the cement busted on the road and drained all the water in our direction, put it all right down over the lot in back of the kitchen"; and that "By the road breaking, it threw water down and put pressure against my wall, throwed the earth against

the wall and pushed it in; seemed to back the building up."

Petitioners' witness, James Schellhase, a registered engineer, after inspecting the premises and observing the alleged damage to the east wall of petitioners' property, was of the opinion that: "* * * the pressure of the earth lying to the east of the wall was forcing the wall in"; and, further, that: "The pressure of the earth lying immediately east of that house is apparently moving, or the pavement and shoulder would not have sunk on the road."

On the other hand, respondent's witness, Percy Christy, also a registered engineer, testified that he had examined the Murray property; that based upon his experience in highway construction and his inspection of the Murray property, he had not formed an opinion as to what caused the foundation wall to crack, stating: "It is a mystery to me. I can't figure it out." This witness, further basing his opinion on his experience and inspection of the property, testified: "There is pressure against the house from somewhere."

Respondent's witness, Cecil Wells, testified that he did not observe any connection between the sinking of the road directly above the Murray house on "the eighteen foot embankment" and the pushing in of the petitioners' basement wall, but in answer to the inquiry: "Will you agree there can be a subteranean slippage where there is no noticeable effects on the surface", he answered, "Yes."

Petitioners' witness, James Schellhase, who had made a cross section of the road at the point of the alleged slippage, further testified that: "In my opinion that earth is definitely moving and the apparent toe of the slope is not at the same line as shown in this cross section. A slide can move in several different ways. One in particular is for the immediate ground beyond the point where the pressure seems to start showing no apparent breakage. However, it may show up below the part that

shows no breakage; other breakage may show up below it, so although the ground may show no apparent breakage, in my opinion it is still moving."

A further detailed statement of the evidence is unnecessary for the decision of this case, as the petitioners are here under the theory of *Hardy and Deitz* v. *Simpson, Road Commissioner*, 118 W. Va. 440, 190 S. E. 680. Petitioners are seeking simply a writ of mandamus to compel the respondent, the State Road Commissioner of West Virginia, to institute a proceeding in eminent domain against petitioners to determine what, if any, damages petitioners have suffered. In that proceeding the Circuit Court of Brooke County, or a jury thereof, will try the questions of fact raised on this record.

For the foregoing reasons the writ of mandamus prayed for is awarded.

*Write awarded.*