STATE *ex rel.* SAMUEL KENNETH CUTLIP, *et al.*

*v.*

BURL A. SAWYERS, *as State Road Commissioner of West Virginia*

(No. 12203)

Submitted January 29, 1963.          Decided April 2, **1963.**

*Donald C. Carman, T. D. Kauffelt,* for relators.

*Anthony G. Halkias,* for respondent.

PER CURIAM:

Relators, Samuel Kenneth Cutlip and Oreda L. Cutlip, filed their petition in this Court on December 4, 1962, praying for a rule requiring the respondent to show cause why a writ of mandamus should not be awarded against him compelling him to institute condemnation proceedings to ascertain just compensation for the property of relators taken or damaged by the state road commission. The petition alleges in substance that relators are the owners of a tract of land in Vienna, Wood County, West Virginia, which they acquired on May 31, 1961; when U. S. Route 21 was relocated by the state road commission in 1950, an 18 inch drain or

culvert was laid beneath said road, the drain ending at the boundary line between the state road commission right of way and relators' property; the drain was so negligently constructed that, during hard rains, water flows through this drain onto relators' property; and, on September 7, 1961, a severe rainfall occurred, the water from which was collected and channeled through the drain substantially damaging the property of relators. The petition also alleges that relators' predecessors in title had protested the condition to the state road commission but such protests were ignored.

In response to the rule the respondent filed an answer in which he admitted most of the material allegations of the relators' petition, but denied that the drain was negligently constructed, and asserted that relators' predecessors in title, by deed, dated the 12th day of January, 1949, granting a portion of their property to the state road commission for highway purposes, released any and all claims for damages that might be occasioned to the residue by reason of the construction and maintenance of a state road over the parcel of land therein conveyed.

The respondent also filed a "Special Plea of Statute of Limitations" based on the provisions of Code, 17-1-3, and Code, 55-2-12, as amended.

It is stipulated between the parties that the minimum amount of damage necessary to sustain this proceeding was occasioned and that no written recognition of any right of the respondent to divert water on the land of the relators was ever given. It is also stipulated that the drain was constructed in the year 1950 and within 30 days of construction a sufficiently hard rainfall occurred to cause water to flow through the drain onto the land of the relators.

Depositions were taken, bearing primarily on the issue of prescriptive right, in which the witnesses for the relators affirmed the fact that protest concerning the condition had been made to the state road commission and the witnesses for the respondent denied any knowledge of such protest, or that any letter of protest could be found in the files,

though admitting that the files for the year 1956, when such a letter or protest was allegedly written, could not be located.

"If a highway construction or improvement results in probable damage to private property without an actual taking thereof and the owners in good faith claim damages, the State Road Commissioner has the statutory duty to institute proceedings within a reasonable time after completion of the work to ascertain damages, if any, and, if he fails to do so, after reasonable time, mandamus will lie to require the institution of such proceedings." Point 1 Syllabus, *State ex rel. Griggs* v. *Graney, State Road Com'r.*, 143 W. Va. 610, 103 S. E. 2d 878. This principle was applied and followed in the recent case of *State ex rel. French et al.* v. *Sawyers, State Road Com'r.*, decided February 26, 1963, at the present term of Court. In view of the stipulation that the minimum amount of damage to sustain this action has been done, mandamus will therefore lie in the instant case against the state road commissioner under the authority cited in those two cases, in the absence of any doubt as to the clear legal right thereto on the part of relators. The principle that mandamus will issue only upon a showing of a clear legal right to the relief sought applies in proceedings such as the present one. *State ex rel. French* v. *Sawyers, State Road Com'r.*, 147 W. Va. 619, 129 S. E. 2d 831; *State ex rel. Quick* v. *Bailey, State Road Com'r.*, 128 W. Va. 123, 35 S. E. 2d 735; *State ex rel. Dunn* v. *Griffith, State Road Com'r.*, 139 W. Va. 894, 82 S. E. 2d 300. And, in establishing a clear legal right, the relator must show a right in the taken or damaged property superior to that of the state. *Childers* v. *State Road Com'r.*, 124 W. Va. 233, 19 S. E. 2d 611.

The state road commissioner, by an able brief, has attempted to deny relators' clear legal right to relief by interposing the special plea relating to the acquisition of the road commissioner of the right to do the damage occasioned by prescription, Code, 17-1-3, and of the applicable statute of limitations as set out in Code, 55-2-12, as amended, and in his answer by asserting the release of "any and all claims for damages that may be occasioned to the residue of the

lands of the parties of the first part by reason of the construction and maintenance of a state road over, upon and under the parcel of land" therein conveyed. Code, 17-1-3, provides ". . . Any road shall be conclusively presumed to have been established when it has been used by the public for a period of ten years or more, and public moneys or labor has been expended thereon, whether there be any record of its conveyance, dedication or appropriation to public use or not. . . ." The portion of the section preceding the quoted language defines the term "road" to include the right of way, roadbed and all necessary culverts, drains, ditches and other adjuncts not here pertinent. As heretofore stated the evidence on the question of whether the state road commissioner has acquired a prescriptive right by virtue of this statute to collect and cast waters, and the concomitant debris, upon the property of relators is in conflict. On the one hand, it is affirmed by relators' predecessors in title that protests, both oral and written, were made to the local state road authorities. The present authorities, who did not hold office during the time when such protests were alleged to have been made, denied any knowledge of the same and failed to locate any written protest in their files. It is conceded by them that the files for the year 1955, and also for the year 1956, when the letter of protest was allegedly written, could not be located. On the other hand, relators' witness, who allegedly wrote the letter of protest, stated that she usually made copies of all of her correspondence, which she still retained, but had made no search for the letter in her records prior to the time her deposition was taken.

In *Town of Paden City* v. *Felton,* 136 W. Va. 127, 66 S. E. 2d 280, the first syllabus point states: "To establish an easement by prescription there must be continued and uninterrupted use or enjoyment for at least ten years, identity of the thing enjoyed, and a claim of right adverse to the owner of the land, known to and acquiesced in by him; but if the use is by permission of the owner, an easement is not created by such use." It will be noted in the instant case that the amount of water collected and cast upon relators' land depends entirely upon the severity of the rainfall, and, in

the absence of any protest, which is not unequivocally contradicted by the state road authorities, the right assertedly acquired by the state road commissioner by prescription would, in the nature of things, vary from practically nothing to a complete flooding of the relators' property. The identity of the thing enjoyed is, at this time, not established by any evidence, and relators' right to mandamus is not defeated on that ground.

Similarly, with regard to the statute of limitations, Code, 55-2-12, provides that every action for damage to property shall be brought within two years next after the right to bring the same has accrued. It is stipulated that the damage herein occurred by reason of a heavy rainfall in the month of September, 1961, and this proceeding was filed in this Court on December 4, 1962, well within the two-year period prescribed by the statute. It is conceded in brief and argument that the damages herein are temporary instead of permanent, and while relators are necessarily limited to damages occurring within the two-year period and cannot obtain compensation for any damage occurring prior thereto by reason of the construction of the drain, the state road commission may be liable under Article III, Section 9 of the Constitution for items of temporary damage. *State ex rel. Murray* v. *Graney,* 143 W. Va. 643, 103 S. E. 2d 888; *Tracewell* v. *County,* 58 W. Va. 283, 52 S. E. 185. See also *McCray* v. *Town of Fairmont,* 46 W. Va. 442, 33 S. E. 245; *Jordan* v. *City of Benwood,* 42 W. Va. 312, 23 S. E. 266. Cp.: *Carden* v. *County Court,* 110 W. Va. 195, 157 S. E. 411.

A more serious question is presented as to the release. A similar release was interposed as a defense in the case of *State ex rel. Murray* v. *Graney,* 143 W. Va. 643, 103 S. E. 2d 888, but, as here, was apparently not relied upon in brief or argument. In that case, after the construction of the road, cracks appeared in the petitioners' house and the roadbed was allegedly caused to slip toward and onto the petitioners' remaining property by reason of the traffic on the road, and upon the facts, this Court awarded the writ as prayed for. In the recent case of *State ex rel. Ashworth* v. *State Road Comm.,* 147 W. Va. 430, 128 S. E. 2d 417, this Court held a

like release to be clear and unambiguous and to require no construction. In that case the state road commission, approximately six years after purchasing a portion of the relators' land for a conventional highway, redesignated the highway constructed thereon as a controlled-access facility, and deprived relators of their right of access thereto. In holding that the release did not bar the right of relators to relief by mandamus, the Court stated: "There can not be a release without unequivocal acts showing expressly or by implication an intention to release. 45 Am. Jur., Release, § 28. Clearly there was no express showing of any release of this vested interest, nor can we necessarily imply any intention to so release this right."

In the instant case, the release was included in the deed of 1949 and the construction of the drain was not completed until 1950. It may well be that the plans for construction provided for additional facilities to dispose of the waters collected, rather than cast them at large to overrun the resi-. due of the property or that both parties envisioned only small amounts of water, if any, and thus, inconsequential damages to the residue by reason thereof. It is difficult to believe that a landowner, upon selling only a portion of his land, would invest in the grantee an absolute right to completely devastate the remainder at various intervals, but that, of course, is within the landowner's prerogative, and whether the release involved herein contemplated the damages complained of, we do not now decide. This is simply a proceeding in mandamus to compel the road commissioner to institute proceedings in eminent domain to determine what, if any, damages relators have suffered, and, as such, it is the duty of this Court to determine only the question of whether relators have shown a clear legal right to the relief sought. In arriving at the conclusion that the relators have shown such right, and that the defenses interposed by the state road commission do not warrant a denial of the writ, we do not imply that such propositions of law cannot be asserted in the condemnation proceeding, or that our ruling thereon will be the same when the issues thus raised are fully developed upon proper pleadings and proof. Suffice to say, such issues have not been sufficiently de-

veloped in this proceeding to preclude relators from the relief sought. As was stated in *Hardy and Deitz* v. *Simpson*, 118 W. Va. 440, 190 S. E. 680, "That she [relator] has rights, and that some way should be found to enforce them is clear; the plain provision of the constitution, with respect thereto, cannot be ignored. If the landowner cannot sue the road commission to recover damages; if she cannot resort to the remedy of injunction to protect such rights; and if she has no other remedy; the plain provisions of the constitution are nullified. This cannot be. Courts are always jealous of the rights of private citizens when such rights clash with the power of the state. While our statutes, covering the taking of private property under the powers of eminent domain, only apply, in direct terms, to the actual taking of property, these provisions must be held, in order to give effect to the constitution, to cover cases where there is damage to property, as distinguished from the actual taking thereof. Therefore, a duty rests on the state to take necessary steps under our condemnation statutes to ascertain damages to the owners of private property, whether the same is actually taken, or damaged only."

The writ of mandamus will therefore be awarded as prayed for.

*Writ awarded.*