STATE *ex rel.* W. H. RHODES

*v.*

THE WEST VIRGINIA DEPARTMENT OF HIGHWAYS, *a corporation, and* WILLIAM S. RITCHIE, WEST VIRGINIA COMMISSIONER OF HIGHWAYS

(No. 12924)

AND

STATE *ex rel.* HOPE SHREWSBURY, *etc., et al.*

*v.*

THE WEST VIRGINIA DEPARTMENT OF HIGHWAYS, *a corporation, and* WILLIAM S. RITCHIE, WEST VIRGINIA COMMISSIONER OF HIGHWAYS

(No. 12925)

Submitted January 18, 1972.     Decided March 14, 1972.

Dissenting Opinion March 14, 1972.

*Sayre & Sayre, Robert B. Sayre, Floyd M. Sayre* (now deceased), for relators.

*Claude H. Vencill,* Legal Division, Department of Highways, for respondents.

CALHOUN, PRESIDENT:

This case involves two separate proceedings in mandamus instituted in this Court by owners of separate parcels of land to compel the West Virginia Department of Highways and William S. Ritchie, Jr., West Virginia Commissioner of Highways, as the respondents, to institute two separate proceedings in eminent domain in the Circuit Court of Raleigh County for the purpose of ascertaining the amount of damages alleged to have been caused to real estate owned by the petitioners as a consequence of the construction of a state public highway in the vicinity of the Town of Crab Orchard in Raleigh County.

The petitioners in one of the mandamus proceedings are Hope Shrewsbury and others who are the widow and children of Willard Shrewsbury, deceased. The petitioner in the other mandamus proceeding is W. H. Rhodes. Inasmuch as the two mandamus proceedings involve similar factual situations and essentially identical legal questions, they have been combined for submission and decision in this Court.

Numerous pleadings were filed and rather voluminous testimony in the form of depositions was taken in behalf of the respective parties in each of the two mandamus cases. As we shall undertake to state hereafter in this opinion, we are of the opinion that many of the issues raised by the pleadings and by the depositions will bear more properly upon issues which will be involved in subsequent eminent domain proceedings than upon the issues involved in these proceedings in mandamus.

By reason of the provisions of Section 3 of Article VIII of the Constitution of West Virginia, this Court has original jurisdiction in mandamus. By reason of the provisions of Code, 1931, 54-2-1, the circuit courts of the state have exclusive original jurisdiction in eminent domain proceedings. This Court has and may exercise jurisdiction in eminent domain only in its appellate capacity. These principles pertaining to jurisdiction are deemed to be material in this case because, to a considerable extent, the pleadings filed and the depositions taken in behalf of the respective parties in the two proceedings in mandamus apparently were designed to determine whether the real estate in question was or was not actually damaged for public purposes as a consequence of the construction of the public highway in question.

In addition to all other pleadings filed in each of the two mandamus proceedings, the respondents, in each of the two cases, filed a plea of the statute of limitations by which it was asserted that any remedy the petitioners as landowners might otherwise have is barred by the two-year limitation period prescribed by Code, 1931, 55-2-12,

as amended. The cases were submitted for decision upon the pleadings, upon the depositions, and upon briefs and oral argument of counsel.

The pleas of the statute of limitations raise some unusual legal propositions. Section 9 of Article III of the Constitution of West Virginia provides that private property "shall not be taken or damaged for public use, without just compensation; * * *." Section 35 of Article VI of the Constitution provides that "The State of West Virginia shall never be made defendant in any court of law or equity, * * *." In the light of these two constitutional provisions, this Court has repeatedly held that the West Virginia Department of Highways, (formerly designated as The State Road Commission), an agency of the state, may be required by mandamus to institute eminent domain proceedings in order to ascertain just compensation for private land taken or damaged for state highway purposes. *State ex rel. French* v. *State Road Commission*, 147 W.Va. 619, 129 S.E.2d 831; *Hardy* v. *Simpson*, 118 W.Va. 440, 190 S.E. 680. See also *Johnson* v. *City of Parkersburg*, 16 W.Va. 402, pt. 3 syl. The second point of the syllabus of the *Simpson* case is as follows:

> "Where the construction or improvement of a state highway results in damage to private property, short of the actual taking thereof, it is the duty of the State Road Commission, under Code, 54-2-14, and *within a reasonable time after the completion of the work out of which such damage arises*, to institute proceedings to ascertain the damage to which the owner of such property may be entitled." (Italics supplied.)

The following is the language of the first point of the syllabus of *State ex rel. Griggs* v. *Graney*, 143 W.Va. 610, 103 S.E.2d 878: "If a highway construction or improvement results in probable damage to private property without an actual taking thereof and the owners in good faith claim damages, the State Road Commissioner has the statutory duty to institute proceedings within a reasonable time after completion of the work to ascertain damages,

if any, and, if he fails to do so, after reasonable time, mandamus will lie to require the institution of such proceedings." To the same effect, see *State ex rel. Phoenix Insurance Company* v. *Ritchie,* 154 W.Va. 306, pt. 1 syl., 175 S.E.2d 428; *State ex rel. Teter* v. *State Road Commission,* 152 W.Va. 805, syl., 166 S.E.2d 757; *State ex rel. Cutlip* v. *Sawyers,* 147 W.Va. 687, syl., 130 S.E.2d 345.

The pleadings in this case raise an issue of fact relative to the time when the highway construction project involved in this case was completed. In these circumstances, we cannot determine in these mandamus proceedings whether the petitioners are barred by the pertinent statute of limitations from asserting in a proper manner any claim they may have for damages resulting to their respective parcels of real estate by reason of the highway construction. See *State ex rel. State Road Commission* v. *Taylor,* 151 W.Va. 535, pt. 1 syl., 153 S.E.2d 531.

Beginning in 1966, the State Road Commission of West Virginia, presently designated as the West Virginia Department of Highways, commenced the construction of a four-lane public highway substantially corresponding in its location to the course and route of the former two-lane highway. Though no real estate of the petitioners was actually taken in connection with the four-lane highway construction, the petitioners assert in their mandamus petitions that their respective parcels of real estate were substantially damaged and lessened in market value as a direct consequence of the construction of the new highway.

Prior to the commencement of the construction of the four-lane highway, the petitioners owned parcels of real estate abutting upon the two-lane highway, which real estate was substantially on the same level as the highway. There was adequate means of vehicular access from the two-lane highway to each of the two parcels of real estate. Between the edge of the two-lane highway and the edge of the petitioners' respective parcels of real estate, there were parking areas which afforded convenient facilities for

parking motor vehicles used by the owners of the real estate, by their friends and particularly by patrons of the commercial enterprises maintained by the owners of the two parcels of land. These parking areas were located on the right-of-way of the West Virginia Department of Highways. W. H. Rhodes, the petitioner in one of these mandamus proceedings, had paved with asphalt the parking area in front of his commercial building at his own expense but with the acquiescence and approval of the highway authorities.

The four-lane highway has two lanes for southbound traffic and two lanes for northbound traffic separated by a center median strip four feet in width. Long prior to 1966, petitioner Rhodes constructed on his land a block building with a brick front. He had also constructed a sidewalk in front of the building. The southern portion of the building is rented by Rhodes to the United States Postal Department for use as the post office of the Town of Crab Orchard. Rhodes contends that, because of the lessened accessibility, patrons of the post office have made numerous protests relative to the resulting inconvenience and that there is a genuine danger that the post office may be moved from his premises.

Petitioner Rhodes formerly used the northern portion of his building as a retail electrical supply store and as a place for conducting a cabinet business. He alleges that these business enterprises have been rendered less accessible to the public by reason of the newly-constructed highway; that as a result thereof, his business decreased more than fifty percent in volume; and that consequently he has found it necessary to move his business operations to another location. Rhodes alleges further that the new highway has been raised considerably above the level of his real estate; that, as a result of the construction of the new highway, an unsightly strip of land has been left on the public right-of-way between the new highway and his real estate; and that his property has been otherwise substantially damaged and reduced in its market value.

The Shrewsbury petitioners allege damage to their land and a reduction in the market value thereof in respects quite similar to those asserted by Rhodes. Prior to 1966, Willard Shrewsbury and his wife, Hope Shrewsbury, had acquired their real estate for the purpose of operating a restaurant in a commercial building which had been constructed previously on that property. Since the death of Willard Shrewsbury, his widow and children, the petitioners in one of the mandamus proceedings, have leased the restaurant property to a tenant who operates therein a beer and soft drink retail business. The median strip in the four-lane highway has been so constructed that the nearest break in the median strip for northbound traffic is 800 feet north of the Shrewsbury property. The Shrewsbury petitioners contend that, as a consequence of the construction of the new highway, a grossly unsightly strip of the public right-of-way has been abandoned between the curb of the highway and the Shrewsbury property line. They contend that, as a result of the highway construction, the unpaved shoulder of the highway is so constructed as to cause surface water to flow or to drain under their building; that the construction of the highway has resulted in a steep means of access to their property which is hazardous to vehicular travel to and from their land; and that, by reason of the highway construction, the market value of their real estate has been decreased fifty percent.

It is fundamental that one who seeks relief by mandamus must show a clear legal right to the relief which he seeks. *Wilson* v. *The County Court of Logan County,* 150 W.Va. 544, pt. 6 syl., 148 S.E.2d 353. In any case such as these, however, it is not essential that one seeking relief in mandamus must establish that he is entitled ultimately to recover damages in the eminent domain proceeding he seeks to have instituted. The general rule applicable to cases of this character was stated in *State ex rel. French* v. *State Road Commission,* 147 W.Va. 619, 622, 129 S.E.2d 831, 833, as follows:

"The effect of the pertinent prior decisions of this Court is that, in a mandamus proceeding a

landowner shows that a highway construction or improvement has resulted in probable damage to his private property without an actual taking thereof and that the landowner in good faith claims compensation therefor, he has thereby established a clear legal right, under the Constitution and statutes of this state and the decisions of this Court, to require the state road commissioner to institute proper proceedings in eminent domain to ascertain the compensation, if any, to which the landowner is entitled."

To the same effect, see *State ex rel. Cutlip* v. *Sawyers,* 147 W.Va. 687, 692-93, 130 S.E.2d 345, 348-49; *State ex rel. Griggs* v. *Graney,* 143 W.Va. 610, 103 S.E.2d 878; *Riggs* v. *State Road Commissioner,* 120 W.Va. 298, 197 S.E. 813.

For reasons stated in this opinion, we are of the opinion that the petitioners in the two mandamus proceedings have established a clear legal right to the relief sought by them and accordingly writs of mandamus are awarded in accordance with the prayers of the mandamus petitions.

*Writs awarded.*

BERRY, JUDGE, dissenting:

I dissent from the majority opinion in these consolidated cases for the reasons stated in my dissenting opinion in the combined cases of *State ex rel. Phoenix Insurance Company* v. *Ritchie,* 154 W.Va. 306, 175 S.E.2d 428.

I am of the opinion that if the alleged damages to the petitioners' property had been caused by a public utility authorized to institute eminent domain proceedings, such alleged damages as are apparently involved in the case at bar could not be recovered in an enminent domain proceeding, and any recovery, if any, would have to be obtained through a separate action against the public utility. Inasmuch as the State cannot be sued in a separate action, a claim for the alleged damages could be filed in the Court of Claims against the State, and, therefore, eminent domain proceedings by the State is not the proper procedure under the circumstances in this case.