395 S.E.2d 762

**The LOWNDES BANK**

v.

**MLM CORPORATION, et al.**

**No. 19186.**

Supreme Court of Appeals of West Virginia.

June 26, 1990.

---

David English Carmack, Asst. U.S. Atty., Washington, D.C., for U.S.

Thomas W. Kupec, Michael & Kupec, Clarksburg, for Lowndes Bank.

James A. Liotta, Tharp, Liotta & Janes, Fairmont, W.Va., for Country Club Co., Inc., Michael & Patricia Yanero, W.Va. Fuels, Inc.

NEELY, Chief Justice:

This case requires us to engage in a difficult exercise in federal statutory construction. The appellant is the Internal Revenue Service (United States) which maintains that the Circuit Court of Harrison County did not have jurisdiction to entertain a claim by The Lowndes Bank (Bank), the appellee, to certain monies in the hands of a third party that the United States also claimed.

The Lowndes Bank filed a complaint asking the circuit court to determine that Lowndes' claim to certain funds held by the Buckhannon Sales Company, Inc. (BSC), for Richard N. White and Lynna S. White (taxpayers) was entitled to priority over all other claimants named as defendants, including the United States. The United States moved to dismiss on the ground that the circuit court lacked jurisdiction over the United States. By order entered 27 July 1988, the circuit court denied the Government's motion and ordered that the funds held or thereafter acquired by BSC for taxpayers be paid over to The Lowndes Bank.

The Lowndes Bank lent $860,000 to MLM Corporation (MLM) in June, 1980. As security for the corporation's notes, taxpayer Richard N. White, who was president of MLM and his wife, Lynna S. White, gave their personal guarantees and provided deeds of trust to certain properties owned by them in Lewis County, West Virginia. Thereafter, MLM filed for bankruptcy, and on 31 August 1983 taxpayers entered into an agreement with the Bank to pay off the Corporation's note. As security for that agreement, taxpayers assigned to the Bank the right to receive certain note payments and royalties due to taxpayers from Appalantic Corporation. The amounts due from Appalantic Corporation were paid through BSC, which acted as taxpayer's agent.

The Internal Revenue Service filed notice of a federal tax lien against taxpayers in Lewis County, West Virginia in the amount of $861,029.18. On or about 24 January 1986 the Internal Revenue Service served a notice of levy for those taxes on BSC. Thereafter, BSC did not pay over to either the Bank or the United States any of the monies it received for taxpayers from Ap-

palantic Corporation; rather, BSC kept the funds in its possession.

On 11 January 1988, the Bank filed a complaint in the Circuit Court of Harrison County requesting, *inter alia,* that the court determine "the relative rights, entitlements and interests of the respective parties in and to the funds" held by BSC. The Government moved to dismiss the suit for lack of subject matter jurisdiction, claiming that, once the notice of levy was served, the Bank's exclusive remedy against the United States was a wrongful levy action filed in federal district court under § 7426 of the *Internal Revenue Code* (26 U.S.C.). The United States contended that 28 U.S.C. § 2410(a)(5), upon which the Bank relied, did not confer jurisdiction over the United States in this case because this was not a suit "in interpleader or in the nature of interpleader." The United States asserted that the Bank was not a stakeholder in possession of property subject to conflicting claims. Alternatively, the United States argued, the suit should be dismissed because the United States had not been served in accordance with 28 U.S.C. § 2410(b). The circuit court denied the government's motion, and ordered that the funds held or thereafter acquired by BSC for taxpayers be paid over to the Bank.

On appeal the United States assigns as error *only* the circuit court's ruling on its motion to dismiss. The United States does not assert that the circuit court decided the issue before it concerning the priority of liens incorrectly on the merits.

### I.

■ This case hinges on whether the suit by the Bank is proper under 28 U.S.C. § 2410(a) which provides:

Under the conditions prescribed in this section and section 1444 of this title [28 USCS § 1444] for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

(1) to quiet title to,

(2) to foreclose a mortgage or other lien upon,

(3) to partition,

(4) to condemn, or

(5) of interpleader or in the nature of interpleader with respect to, real or personal property on which the United States has or claims a mortgage or other lien.

It is § 2410(a)(1) and (5) that are at issue here. If the Bank's action fits either provision, then the United States has waived sovereign immunity as to the suit.

■ The Bank's action can easily be seen as an action to quiet title to personal property. Federal courts have read 28 U.S.C. § 2410 broadly, particularly when faced with an action to quiet title. Often, the courts have looked beyond the label placed on the action, and seen the substance of "an action to quiet title to real or personal property on which the United States has or claims a mortgage or other lien", to which Congress expressly waived sovereign immunity when it enacted § 2410(a)(1). Lowndes Bank seeks to quiet title to funds held by Buckhannon Sales Co. for Richard and Lynna White, who have assigned their rights to the funds to the Bank, and on which funds the United States claims a tax lien.

In *Aqua Bar and Lounge v. United States Dept. of Treasury,* 539 F.2d 935 (3d Cir.1976), a taxpayer whose liquor license had been seized and sold by the IRS for nonpayment of taxes brought an action to invalidate the seizure and sale and to enjoin the transfer of the license to the buyer. The court saw the action as an action to quiet title to personal property, allowed under § 2410(a)(1).

The taxpayer in *Aqua Bar,* like the Lowndes Bank in the case before us, did not attempt to use § 2410 to challenge the underlying tax assessment on which the lien was based. The court distinguished *Aqua Bar* from cases in which the taxpayers attempted to use § 2410 to circumvent the "pay first, and litigate later" principle of our tax system. 539 F.2d at 938, 939. If the Lowndes Bank were asserting that

the taxpayers do not owe the United States the money it says they owe, the suit would be barred. Such is not the case here, so the suit was proper.

In *Hudson County Bd. of Chosen Free-holders v. Morales,* 581 F.2d 379 (3d Cir. 1978), where a county sought a judgment invalidating a federal tax lien and declaring money seized in an arrest forfeited to the county, the Third Circuit applied its *Aqua Bar* reasoning and saw an action to quiet title to personal property, in that case, money on deposit. The court saw no reason under § 2410 that money on deposit should be treated any differently from other forms of personal property, such as a liquor license. 581 F.2d at 384.

The role of the modern court often involves looking past the form to the substance of the action. In *De Rewal v. United States,* 572 F.Supp. 1124 (E.D.P.A.1983), trust beneficiaries brought an equity suit in state court to restrain the IRS from obtaining possession of property. On removal, the federal court allowed the case to proceed under 28 U.S.C. § 2410(a)(1), saying, "[a]lthough the plaintiffs do not specifically seek to quiet title to property, the clear intention of their complaint is to remove the cloud of the IRS levy from their title." 572 F.Supp. at 1129.

We see no reason to depart from the sound approach federal courts have taken in this area. The case before us is clearly an action to quiet title to personal property, specifically permitted under 28 U.S.C. § 2410(a)(1).

## II.

We also believe the Bank's action could be entertained under 28 U.S.C. § 2410(a)(5) as an action of interpleader. The cases involving actions of interpleader or in the

nature of interpleader[1] under § 2410(a)(5) are few, and contradictory. Moreover, all the cases directly on point come from trial courts.

The two leading cases in this area are *Johnson Service Co. v. H.S. Kaiser Co.,* 324 F.Supp. 745 (N.D.Ill.1971) and *Citizen's Bank and Trust Co. of Maryland v. United States,* 344 F.Supp. 866 (D.Md. 1972). In *Johnson,* the plaintiff was owed money by a subcontractor who, in turn, was owed money by a general contractor. The subcontractor assigned the plaintiff the money he was to receive from the general contractor but, thereafter, the general contractor became insolvent and his obligations were taken over by an insurance company. The United States served the insurance company with a notice of levy, at which point the plaintiff sued the insurance company, the subcontractor, the contractor, and ultimately the United States in state court to have his lien determined superior. In a removal proceeding, the district court found that the plaintiff's complaint was neither an action in interpleader nor in the nature of interpleader under 28 U.S.C. § 2410(a)(5) because the plaintiff was not the stakeholder. Therefore, in *Johnson,* the federal court applied a very formalistic interpretation of § 2410(a)(5) and turned the case on whether the plaintiff was the stakeholder, rather than what the nature of the proceeding was. The court conceded, however, that if the insurance company stakeholder had brought the action, jurisdiction would have existed under § 2410(a)(5) in state court.

On the other hand, in *Citizen's Bank and Trust Co. of Maryland v. United States, supra,* the plaintiff bank sued the United States and Chrysler Motors Corporation over the proceeds from a sale of automobiles in the taxpayer's dealership.

---

1. The U.S. Supreme Court has said that suits "in the nature of interpleader" are "those in which the plaintiff is not wholly disinterested with respect to the fund he has deposited in court." *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 532, n. 9, 87 S.Ct. 1199, 1204, n. 9, 18 L.Ed.2d 270 (1967).

In *Texas v. Florida,* 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817 (1938), the Court discussed the bill in the nature of interpleader:

The essential of the bill in the nature of interpleader is that it calls upon the court to exercise its jurisdiction to guard against the risks of loss from the prosecution in independent suits of rival claims where the plaintiff himself claims an interest in the property or fund which is subjected to the risk.

306 U.S. at 406, 407, 59 S.Ct. at 568, 568.

The Government had filed tax liens and levied on (1) the proceeds of the sale of taxpayer's assets held by third party escrow agents, (2) a dealer's account held by Chrysler, and (3) funds deposited in plaintiff's bank. Plaintiff asserted a superior interest in all of these funds to secure an unpaid balance due from taxpayer.

The complaint contained three counts, only one of which is relevant to the case now before us. Chrysler held $16,000 that belonged to the taxpayer. The plaintiff claimed that the government wrongfully levied on this property and that the plaintiff had a right to recover that sum under 26 U.S.C. § 7426, the wrongful levy statute. But the taxpayer also asked the court to quiet title to that fund under 28 U.S.C. § 2410 and to declare the plaintiff's rights in the fund. The court held as follows:

Count II alleges that plaintiff had a perfected security interest in certain funds belonging to the taxpayer which are held by Chrysler; that the taxpayer defaulted on its loan and owes plaintiff a balance of some $70,000; that during 1971 the government filed a series of tax liens against taxpayer; and that on April 19, 1971, the government levied on the funds held by Chrysler. From the pleadings, it appears that Chrysler still holds the funds in question.

Without going into all the plaintiff's claimed statutory bases for suit and the government's objections thereto, this Court concludes as to Count II that the most reasonable way to determine the relative interests of the parties to the fund in question is to allow Chrysler to interplead the two claimants. The effect of such a ruling is to permit the plaintiff to proceed under Count II against the government.

A counterclaim for interpleader where the defendant is or may be exposed to double liability is allowed by Rule 22, Federal Rules of Civil Procedure. The plaintiff here has no objection to the interpleader, and the government in its answer to Chrysler's counterclaim has apparently joined in seeking it. Moreover, 28 United States Code § 2410(a)(5) specifically provides that the United States may be named a party in any civil action or suit in any district court having jurisdiction of the subject matter, if the suit is in the nature of interpleader with respect to property against which the United States has or claims a lien. Through the interpleader, whatever rights plaintiff may have can be vindicated as fully as if it proceeded under the statutory remedies alleged in its complaint. Indeed, another remedy under § 2410 is one that plaintiff sought, namely, the claimed alternative of quieting title. In view of this Court's conclusion that Count II may proceed as an interpleader action, it is not necessary to consider the points raised by the government and by the plaintiff as to plaintiff's other theories of relief.

344 F.Supp. at 868.

Consequently, in *Citizen's Bank* the court looked to the *substance* of the issues to be decided and concluded that if an interpleader issue is appropriately raised, the fact that the party raising the interpleader issue is not technically the stakeholder does not defeat jurisdiction under § 2410.

Confusion over exactly what constitutes "interpleader" under § 2410(a)(5) is not limited to federal courts: The same conflict exists among New York trial courts, the only state jurisdiction that yields up reported cases. *John A. Johnson & Sons v. National City Bank of New York,* 129 N.Y.S.2d 86 (N.Y.Sup.1954) and *South Brooklyn Savings Bank v. Allstate Insurance Co., et al,* 84 Misc.2d 287, 375 N.Y. S.2d 273 (N.Y.Sup.1975) illustrate the point. In *Johnson,* plaintiff brought an action to compel payment of a fund on deposit with defendant bank. On motion by defendant to interplead the United States and others claiming an interest in the fund by reason of tax liens or subrogated rights, the New York Supreme Court (trial court) held that § 2410(a) allowed the United States to be made a party because "[a]lthough, if the motion of the moving defendant be granted, the United States will be joined as a nominal defendant, actually it will be joined as a claimant against the fund and will be

put in a position to assert and establish such claim. Hence, this is not a case where an attempt is being made to sue the federal government." 129 N.Y.S.2d at 87.

On the other hand, in *South Brooklyn Savings Bank,* the mortgagee of real property destroyed by fire brought suit to determine the priority of rights among it, the United States which had filed a tax lien, mortgagors, and a town that was seeking to have the premises demolished, with respect to proceeds from a fire insurance policy. On motion by the United States to dismiss, the New York Supreme Court (trial court) held because the insurer and not the mortgagee was the stakeholder, the action by the mortgagee was not in interpleader or in the nature of interpleader and granted the government's motion to dismiss.

### III.

In the case before us the Bank named as defendants MLM Corporation, Richard N. White, Lynna S. White, Buckhannon Sales Company, Inc., Appalantic Corporation, Country Club Investment and Development Company, Inc., Michael J. Yanero and Patricia Yanero, West Virginia Fuels, Inc., and the Internal Revenue Service. After cataloging numerous complicated financial transactions among all the defendants other than the government, as well as the actions the government had taken to collect federal taxes, the Bank prayed for the following relief:

> WHEREFORE, Plaintiff prays that all of said Defendants be ordered to interplead together; that the various instruments mentioned herein and incorporated as exhibits may be construed; that the meaning, effect, application and priorities thereof may be ascertained and established; that declaratory judgment may be had therefor; that the respective rights, entitlements and interest of the respective parties in and to the funds and properties herein mentioned, both heretofore received and hereafter to be re-

ceived may be adjudicated; that the relative priorities and effect of the liens and assignments herein mentioned may be established; that the Defendant, Buckhannon Sales Co., Inc., be directed by the Court to pay said funds and properties to the proper recipient or recipients thereof as so adjudicated herein; that The Lowndes Bank be allowed to proceed with collection and foreclosure efforts under its agreements and deeds of trust as set forth herein; that The Lowndes Bank has the right to receive all funds due it, under its assignment, deed of trust, and agreement, held by Buckhannon Sales, Inc.; that the Defendants and each of them may be enjoined and restrained from instituting or prosecuting any other action or proceeding in any court against Plaintiff or any other party to this proceeding for any relief relating to the matters set forth herein; that the Bank have judgement against the Defendants for the amount due it as set forth herein; and that Plaintiff may have its costs incurred in this proceeding, including reasonable attorney's fees and such other and further relief, general and special, as the nature or the cause may require.

Buckhannon Sales Company, Inc., the real stakeholder, answered and, after protecting its flanks by meeting the various specific allegations in the Bank's complaint, concluded with the following prayer:

> WHEREFORE, defendant, Buckhannon Sales Company, Inc., a West Virginia corporation, requests that it be permitted to pay the sum of Four Hundred Thirty Four Thousand Eight Hundred Sixty-One Dollars and Thirty-Eight Cents ($434,861.38), which it is presently holding to the Court, and upon payment thereof, be dismissed from this Civil Action, and be awarded its costs in this matter expended.

The Government argues that once the Internal Revenue Service has filed an administrative levy under 26 U.S.C. § 6331, the Government has constructively taken

into its possession the property levied upon and, therefore, the only proper remedy is an action under 26 U.S.C. § 7426 for wrongful levy.[2] However, this statutory wrongful levy action seems custom crafted to determine one claimant's superior rights to money that allegedly still belongs to the taxpayer when the only other claiming par-

2. 26 U.S.C. § 7426 states:

(a) Actions permitted.—

(1) Wrongful levy.—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

(2) Surplus proceeds.—If property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property junior to that of the United States and to be legally entitled to the surplus proceeds of such sale may bring a civil action against the United States in a district court of the United States.

(3) Substituted sale proceeds.—If property has been sold pursuant to an agreement described in section 6325(b)(3) (relating to substitution of proceeds of sale), any person who claims to be legally entitled to all or any part of the amount held as a fund pursuant to such agreement may bring a civil action against the United States in a district court of the United States.

(b) Adjudication.—The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:

(1) Injunction.—If a levy or sale would irreparably injure rights in property which the court determines to be superior to the rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.

(2) Recovery of property.—If the court determines that such property has been wrongfully levied upon, the court may—

(A) order the return of specific property if the United States is in possession of such property; .

(B) grant a judgment for the amount of money levied upon; or

(C) if such property was sold, grant a judgment for an amount not exceeding the greater of—

(i) the amount received by the United States from the sale of such property, or

(ii) the fair market value of such property immediately before the levy.

For the purposes of subparagraph (C), if the property was declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(3) Surplus proceeds.—If the court determines that the interest or lien of any party to an action under this section was transferred to the proceeds of a sale of such property, the court may grant a judgment in an amount equal to all or any part of the amount of the surplus proceeds of such sale.

(4) Substituted sale proceeds.—If the court determines that a party has an interest in or lien on the amount held as a fund pursuant to an agreement described in section 6325(b)(3) (relating to substitution of proceeds of sale), the court may grant a judgment in an amount equal to all or any part of the amount of such fund.

(c) Validity of assessment.—For purposes of an adjudication under this section, the assessment of tax upon which the interest or lien of the United States is based shall be conclusively presumed to be valid.

(d) Limitation on rights of action.—No action may be maintained against any officer or employee of the United States (or former officer or employee) or his personal representative with respect to any acts for which an action could be maintained under this section.

(e) Substitution of United States as party.—If an action, which could be brought against the United States under this section, is improperly brought against any officer or employee of the United States (or former officer or employee) or his personal representative, the court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer or employee as of the time such action was commenced upon proper service of process of the United States.

(f) Provision inapplicable.—The provisions of section 7422(a) (relating to prohibition of suit prior to filing claim for refund) shall not apply to actions under this section.

(g) Interest.—Interest shall be allowed at the overpayment rate established under section 6621—

(1) in the case of a judgment pursuant to subsection (b)(2)(B), from the date the Secretary receives the money wrongfully levied upon to the date of payment of such judgment; and

(2) in the case of a judgment pursuant to subsection (b)(2)(C), from the date of the sale of the property wrongfully levied upon to the date of payment of such judgment.

(h) Cross reference.—

ty is the United States. The wrongful levy statute does not appear to have a mechanism for determining priorities among numerous lienholders.

■ Indeed, 26 U.S.C. § 6331[3] gives the Government some mighty powers of levy and distraint. Furthermore, 26 U.S.C. § 6332(c)(1) imposes personal liability upon "[a]ny person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand of the Secretary ..." and § 6332(c)(2) provides penalties for violation. However, although a person who refuses to honor an administrative levy does so at substantial personal peril, there is no obligation to render unto the United States property that the United States claims but which does not *in fact*

belong to the United States. *U.S. v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); *U.S. v. New England Merchant's National Bank*, 465 F.Supp. 83 (D.Mass.1979). The United States may not take one person's property to satisfy another person's tax obligation, and unless it is established that a taxpayer is the owner of or has some interest in property on which levy is sought to be made, the United States cannot enforce its lien against such property. *U.S. v. Lester* 235 F.Supp. 115 (S.D.N.Y.1964).

■ In the case before us, after the Government issued its levy BSC continued to retain proceeds received from Appalantic, apparently on the grounds that these funds no longer in any way "belonged" to

3. 26 U.S.C. § 6331 states:

(a) Authority of Secretary.—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d) of such officer, employee, or elected official. If the Secretary makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.

(b) Seizure and sale of property.—The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) Successive seizures.—Whenever any property or right to a property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the

United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

(d) Requirement of notice before levy.—

(1) In general.—Levy may be made under subsection (a) upon the salary or wages or other property of any person with respect to any unpaid tax only after the Secretary has notified such person in writing of his intention to make such levy.

(2) 10–day requirement.—The notice required under paragraph (1) shall be—

(A) given in person,

(B) left at the dwelling or usual place of business of such person, or

(C) sent by certified or registered mail to such person's last known address, no less than 10 days before the day of levy.

(3) Jeopardy.—Paragraph (1) shall not apply to a levy if the Secretary has made a finding under the last sentence of subsection (a) that the collection of tax is in jeopardy.

(e) Continuing levy on salary and wages.—

(1) Effect of Levy.—The effect of a levy on salary or wages payable to or received by a taxpayer shall be continuous from the date such levy is first made until the liability out of which such levy arose is satisfied or becomes unenforceable by reason of lapse of time.

(2) Release and notice of release.—With respect to a levy described in paragraph (1), the Secretary shall promptly release the levy when the liability out of which such levy arose is satisfied or becomes unenforceable by reason of lapse of time, and shall promptly notify the person upon whom such levy was made that such levy has been released.

(f) Cross references.—

the taxpayer. However, BSC did not continue to pay over the funds it collected from Appalantic to the Bank, but simply held the funds as a stakeholder. The injured party was the Bank, which decided to force BSC to bring an interpleader action. In this regard the case before us is analogous to an action in mandamus to compel the State to condemn land that it has seized. Because a landowner cannot sue the State, the State must be forced to sue the landowner, and the appropriate way to do this is to bring a mandamus to condemn. *Hardy v. Simpson,* 118 W.Va. 440, 191 S.E. 47 (1937), *Stevenson v. Cavendish,* 134 W.Va. 361, 59 S.E.2d 459 (1950), *State ex rel. Murray v. Graney,* 143 W.Va. 643, 103 S.E.2d 888 (1958)

In the case before us the Government could have brought an action in federal court under 26 U.S.C. § 7403 to enforce its lien.[4] Under subsections (b) and (c) of § 7403 all persons having liens upon or claiming any interest in property involved are made parties and the court is empowered to adjudicate the merits of all claims to and liens upon the property. It is this section, then, that is the mirror image of § 2410 (allowing interpleader in state or federal court) but to trigger § 7403 the United States must file the suit in federal district court. However, the Government brought no action under § 7403 in federal

court to enforce its lien, and as related above BSC did not file its own action in interpleader. Thus the Bank was in an unenviable position and elected to force BSC to frame an appropriate interpleader case.

The government's position in this case exalts form over substance. There is no question that the subject matter of the proceeding below was a legitimate interpleader controversy involving numerous potential claimants to one limited fund whose legal custodian was indifferent to the respective rights of the claimants. If the Bank had sued only defendant Buckhannon Sales, and thereupon Buckhannon Sales had impleaded all the other claimants including the Internal Revenue Service, the government could then have had no complaint about state court jurisdiction. *Johnson Service Co., supra.* But, because the Bank anticipated that ultimately the proceeding would evolve into an interpleader action, the Bank brought all the parties in at once to avoid the delay inherent in third party complaints and, quite possibly, to make sure that the Bank's knowledgeable counsel had the case in a proper posture for complete relief. This was not in any way an action challenging either the amount of the tax or the appropriateness of filing a lien against property in the hands of BSC. Rather, this was an action

---

4. 23 U.S.C. § 7403 states:

(a) Filing.—In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability. For purposes of the preceding sentence, any acceleration of payment under section 6166(g) shall be treated as a neglect to pay tax.

(b) Parties.—All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto.

(c) Adjudication and decree.—The court shall, after the parties have been duly notified of the

action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States. If the property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of such lien with expenses of sale, as the Secretary directs.

(d) Receivership.—In any such proceeding, at the instance of the United States, the court may appoint a receiver to enforce the lien, or, upon certification by the Secretary during the pendency of such proceedings that it is in the public interest, may appoint a receiver with all the powers of a receiver in equity.

to ascertain the priority of liens—something that Congress intended to be reposed concurrently in the state courts under § 2410(a), and which Congress allowed the United States to have decided exclusively in federal court, at its option, by proceeding under § 7403.

## IV.

The Government's second assignment of error is that the circuit court should have dismissed the Government as a party because it was not served in accordance with the provisions of 28 U.S.C. § 2410(b). Section 2410(b) provides that "[i]n actions in the state courts service upon the United States shall be made by serving the process of the court with a copy of the complaint upon the United States Attorney for the district in which the action is brought ... and by sending copies of the process and complaint, by registered mail, or by certified mail, to the Attorney General of the United States at Washington, District of Columbia." Although service in this case was made upon the United States Attorney, service was not made upon the Attorney General of the United States as required by the statute.

■ It is settled law of West Virginia and of the United States that once a defendant has made an appearance, technical defects in the service of process are waived unless the party improperly served can show prejudice. The federal law on this point has been settled since the early years of our Nation. Chief Justice Marshall stated in 1830 that, "The decisions of this court have uniformly been that an appearance cures any defect in the service of process;

and there is nothing to distinguish this case from the general doctrine." *Farrar v. U.S.*, 28 U.S. (3 Pet.) 459, 7 L.Ed. 741 (1830). See *The Merino*, 22 U.S. (9 Wheat.) 391, 6 L.Ed. 118 (1824), and *Knox v. Summers*, 7 U.S. (3 Cranch) 496, 2 L.Ed. 510 (1806). In *Farrar*, the defendant held to have made a general appearance was the Government, by the Attorney General, so it is clear that the Government has always been subject to this particular waiver doctrine.[5]

In West Virginia the case of *Giboney v. Cooper & Cooper*, 57 W.Va. 74, 49 S.E. 939 (1905) made it clear that a general or voluntary appearance by the defendant confers in personam jurisdiction on the court, and waives any defect in process.

■ In the case before us the United States asserts no prejudice as a result of plaintiff's failure to make service upon the Attorney General of the United States, nor does the United States in any way assert that the circuit court erred in its substantive decision that the claim of the plaintiff Bank was superior to the tax lien filed by the United States.

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Harrison County is affirmed.

Affirmed.

---

5. The United States, in its appellate brief, cited *United States v. John Hancock Ins. Co.*, 364 U.S. 301, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960) as standing for the proposition that, "when Congress has imposed conditions on the waiver of the federal government's immunity from suit, those conditions must be strictly observed." That case does indeed stand for that proposition, but the concerns were very different. *John Hancock* involved the redemption provisions of § 2410(c) and a conflicting Kansas statute. In that case,

the substantive rights of the United States as a junior lienholder would be prejudiced if the state statute were allowed to prevail. The Supremacy Clause operated to resolve the conflict in favor of 28 U.S.C. § 2410(c).

In the case before us, there is no state statute which contradicts § 2410. There is simply a failure to serve the Attorney General, which failure has not prejudiced the United States' position in this matter.