GULF COAST GALVANIZING,
INC., Plaintiff,

v.

STEEL SALES CO., INC., Defendant,

v.

TRUSTMARK NATIONAL BANK,
Garnishee–Defendant,

v.

INTERNAL REVENUE SERVICE,
Defendant.

Civ. A. J92–0301(L)(C).

United States District Court,
S.D. Mississippi,
Jackson Division.

May 7, 1993.

Jeffrey Webb, Heidelberg & Woodliff, Jackson, MS, for plaintiff.

William D.M. Holmes, U.S. Dept. of Justice, Tax Div., Washington, DC, E. Clark Rumfelt, Trustmark Nat. Bank, Lemuel Augustus Smith, U.S. Attys. Office, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This case originated as a garnishment action brought by Gulf Coast Galvanizing, Inc. (Gulf Coast) in the Chancery Court for the First Judicial District of Hinds County, Mississippi to collect on a judgment against Steel Sales Co., Inc. from funds in Steel Sales' checking account with Trustmark National Bank (Trustmark or the Bank). The Internal Revenue Service (IRS), claiming an interest in the funds held by Trustmark in Steel Sales account due to an assessment against Steel Sales' for outstanding federal tax liability, removed the action to this court pursuant to 28 U.S.C. §§ 2410 and 1444. Thereafter, the United States of America was substituted as a party in place of the IRS. This cause is now before the court on cross-motions of Gulf Coast and the United States by which each seeks to establish that it is entitled to recover the sum of $9,140.18 being held by the garnishee-defendant Trustmark.[1] Having reviewed the parties' submissions together with the applicable law, the court concludes that the United States' motion should be granted and Gulf Coast's motion denied.

### FACTUAL BACKGROUND

On June 24, 1991 and September 2, 1991, respectively, the United States assessed Steel Sales for unpaid federal taxes due for the first and second quarters of 1991 in the

---

1. To be more precise, though the fund at issue consists of $9,140.18, Gulf Coast seeks to establish entitlement to $9,028.82 of the fund, where- as the government claims entitlement to the entire fund.

collective amount of $133,301.60, including interest and statutory additions. The government recorded a notice of the federal tax liens with the office of the Chancery Clerk of Hinds County, Mississippi on September 30, 1991.

Thereafter, on November 21, 1991, Gulf Coast filed suit against Steel Sales in the Circuit Court of the First Judicial District of Hinds County seeking to recover the unpaid balance of a promissory note executed by Steel Sales. Gulf Coast obtained a default judgment against Steel Sales in the amount of $21,771.81 on January 8, 1992. On March 2, 1992, after securing its judgment, Gulf Coast served a writ of garnishment on Trustmark seeking to collect its judgment from any funds which Steel Sales had in its checking account with Trustmark. On March 30, 1992, the Bank mailed its answer to the writ of garnishment to the court and to counsel for Gulf Coast, advising that Steel Sales had $9,028.82 in its account with the Bank.[2] But no sooner than that answer was mailed, the IRS served on the Bank a notice of levy to collect Steel Sales' tax liability from any property of Steel Sales which was in the Bank's possession.

The Bank's original answer to Gulf Coast's writ of garnishment was received and stamped "filed" by the Hinds County Circuit Clerk on April 1, 1992. On that same day, though, the Bank, having been served with the IRS's notice of levy, prepared and mailed to the clerk for filing an amended answer to the writ of garnishment, requesting that summons be issued against the IRS for an interpleader action.[3] The amended answer was filed with the court on April 6, 1992. Though the Bank moved quickly to notify the

court of the IRS's claim to the fund, Gulf Coast was quicker. On the same day the Bank's original answer was filed, Gulf Coast filed with the Circuit Clerk a motion for judgment on answer of garnishee-defendant and secured from the circuit judge an order authorizing and directing the Bank to release the funds to Gulf Coast.

## ANALYSIS

 The question of priority of a judgment lien in competition with a federal tax lien presents a question of federal law. Under federal law,

> [f]ederal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that "'the first in time is the first in right.'" *United States v. New Britain,* 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954).

*United States v. McDermott,* —— U.S. ——, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993); *see also United States v. National Bank of Commerce,* 472 U.S. 713, 722–23, 105 S.Ct. 2919, 2925–26, 86 L.Ed.2d 565 (1985). In determining the issue of the which of the two competing liens at issue in the case *sub judice* —the federal tax lien or Gulf Coast's judgment lien—was "first in time," the court looks to 26 U.S.C. §§ 6321, 6322 and 6323. These statutes establish that a lien is created in favor of the United States at the time of the assessment by the government for unpaid federal taxes.[4] That lien attaches to all property or property rights the taxpayer then holds or subsequently acquires, and continues until the underlying tax liability is satisfied or the statute of limitations expires.[5]

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

**2.** At the time the writ of garnishment was filed on March 2, 1992, Steel Sales had $28.82 in its account. On March 6, 1992, Steel Sales made a deposit to the account of $9,000. Deposits or adjustments to the account totaling $111.36 were made in May and June 1992, thus increasing the balance to $9,140.18.

**3.** Counsel for Gulf Coast has represented to the court that he advised counsel for Trustmark in an April 1, 1992 telephone conversation that Gulf Coast would not object to Trustmark's filing of this amended answer.

**4.** 28 U.S.C. § 6321 provides:

**5.** 28 U.S.C. § 6322 provides:

> Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and

The lien, however, is not valid against a judgment lien creditor "until notice thereof." [6]

In this case, the government's tax lien arose on the date of June 24, 1991, the date of the initial assessment.[7] And notice was given of the government's lien on September 30, 1991 by the IRS's recording of such notice in the records of the Hinds County Chancery Clerk. Gulf Coast's suit against Steel Sales was not commenced until November 21, 1991, almost two months later, and Gulf Coast did not secure its judgment against Steel Sales until January 8, 1992. "[A] competing state lien [is deemed] to be in existence for 'first in time' purposes only when it has been 'perfected' in the sense that 'the identity of the lienor, the property subject to the lien, and the amount of the lien are established.' " *McDermott*, —— U.S. at ——, 113 S.Ct. at 1528 (quoting *New Britain*, 347 U.S. at 84, 74 S.Ct. at 369). As Gulf Coast's lien had not even arisen at the time the IRS acquired and gave notice of its lien, manifestly, the government's lien was "first in time." The question presented by the parties' motions, though, is whether it should be "first in right." Plaintiff advances three arguments in support of its claim that it should not. First, plaintiff contends that the United States failed in this proceeding to timely assert a claim to the funds and that consequently, the court must conclude that plaintiff, in the absence of a competing claim, is entitled to receive the funds. Plaintiff next argues that because a judgment was entered in the Circuit Court of Hinds County authorizing Trustmark to relinquish the funds in the Steel Sales account to Gulf Coast, Gulf Coast is entitled to the funds in the account. Finally, according to plaintiff, because Steel Sales lost any interest in the funds in the account upon Gulf Coast's filing of the March 2, 1992 writ of garnishment, the

notice of levy thereafter served upon Trustmark by the United States on March 30, 1992 was ineffective since Steel Sales had no property interest to which the government's lien could attach. These positions will be considered seriatim.

### A.

Mississippi law provides by statute for interpleader by a garnishee which has notice that there is a competing claim to the debt or property that is the subject of a garnishment action. Specifically, Miss.Code.Ann. § 11–35–41 (1972) provides if a garnishee,

at any time before final judgment against him, or after such judgment if he had no such notice before the judgment was rendered, shall show that he has been notified that another person claims title to or an interest in the debt or property, which has been admitted by him, or found on trial to be due or to be in his possession, the court shall suspend all further proceedings, and cause a summons to issue or publication to be made for the person so claiming to appear and contest with the plaintiff the right to such money, debt, or property. In such case, if the answer admit[s] an indebtedness, and the garnishee pay[s] the money into court, he shall thereupon be discharged from further liability to either party for the sum so paid. And whenever such garnishee shall by said answer or affidavit show that he has been notified that another person claims title to or interest in such debt or property, it shall be lawful for such third person of his own motion to come in and claim the debt or property, and the claim shall be tried as other claimant's issues are tried whether summons or publication has been made to bring him in or not.

---

shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability), is satisfied or becomes unenforceable by reason of lapse of time.

6. 28 U.S.C. § 6323(a) provides:
 The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judg-

ment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

7. "Where several notices of tax lien have been filed as unpaid taxes accumulate, the priority of each lien relates back to the date of the first notice." *United States v. Celina*, 721 F.2d 163, 166 (6th Cir.1983).

Further, Miss.Code Ann. § 11–35–43 provides that where this interpleader procedure is utilized,

> If the claimant, being duly summoned, fail[s] to appear, the court shall adjudge the money, debt, or property to the plaintiff. If he appear[s], he shall propound his claim to the money, debt, or property in writing under oath; and the plaintiff may take issue thereon, and the same shall be tried and determined as other issues. If the issue be found in favor of the plaintiff, judgment shall be rendered for him against the garnishee, and also for the costs of the interpleader against the claimant; but if the issue be found for the claimant, judgment shall be rendered in his favor against the garnishee, and against the plaintiff for costs. Where the garnishee has paid money into court, the judgment shall direct its payment to the party entitled thereto, and a judgment therefore shall not go against the garnishee.

Under federal law, and in particular 28 U.S.C. § 2410, the United States may be named as a party in a civil action, in state or federal court, "of interpleader or in the nature of interpleader with respect to, real or personal property on which the United States has or claims a mortgage or other lien." This statute, which operates as a waiver of sovereign immunity for the types of actions identified therein, prescribes the procedure for bringing the United States into the action:

> (b) The complaint or pleading shall set forth with particularity the nature of the interest or lien of the United States. In actions or suits involving liens arising under the internal revenue laws, the complaint or pleading shall include the name and address of the taxpayer whose liability created the lien and, if a notice of the tax lien was filed, the identity of the internal revenue office which filed the notice, and the date and place such notice of lien was filed. In actions in the State courts service upon the United States shall be made by serving the process of the court with a copy of the complaint upon the United States attorney for the district in which the action is brought or upon an assistant United States attorney or clerical employee designated by the United States in writing filed with the clerk of the court in which the action is brought and by sending copies of the process and complaint, by registered mail, or by certified mail, to the Attorney General of the United States at Washington, District of Columbia. In such actions, the United States may appear and answer, plead or demur within sixty days after such service or such further time as the court may allow.

28 U.S.C. § 1444 operates in conjunction with § 2410, and provides a right of removal in suits brought against the United States under § 2410:

> Any action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending.

Trustmark's amended answer to the writ of garnishment, in which it acknowledged the competing claim of the IRS to the funds in Steel Sales' account and sought to interplead the funds under Miss.Code Ann. § 11–35–41, was filed with the Hinds County Circuit Clerk on April 6, 1992. A copy of that pleading, along with a summons, was mailed to the United States Attorney for the Southern District of Mississippi on May 19, 1992, and on May 28, 1992, the IRS removed the action to this court under 26 U.S.C. §§ 2410 and 1444. On July 13, 1992, after the action was removed, Gulf Coast filed a response to the Bank's garnishment-interpleader alleging that it was entitled to the interpled funds and that the claim and interest of the IRS in the funds was secondary to the its claim. On November 19, 1992, plaintiff filed its motion for summary judgment, citing as the basis for its entitlement to the fund the government's failure to have asserted any claim to the funds.

On December 1, 1992, after Gulf Coast had moved for summary judgment, a copy of a summons and Trustmark's garnishment-interpleader complaint was personally served on the United States Attorney for this district and copies of those documents were

mailed to the United States Attorney General, as provided for in § 2410. The IRS immediately moved to substitute the United States as a party for the IRS and, within a few days thereafter, on December 7, 1992, filed its answer to Trustmark's garnishment-interpleader, asserting a claim to the funds at issue. The IRS was dismissed from the suit and the United States substituted in its place by order of the court dated December 8, 1992. Gulf Coast asserts that it was entitled to judgment as a matter of law since the IRS did not timely assert a claim to the Bank's garnishment-interpleader pleading. More specifically, Gulf Coast argues that the government was served with a summons and interpleader-complaint on May 19, 1992, and therefore, under the terms of § 2410, was required to file a responsive pleading within sixty days, or within such further time as allowed by the court. Since it failed within this time frame to file a response or to request additional time within which to do so, it has not properly asserted a claim to these funds and judgment should be rendered for plaintiff. Further plaintiff argues, the court must enter judgment in its favor since Mississippi law provides that the court "shall adjudge the money ... to the plaintiff" if a party who has been duly summoned in a statutory garnishment-interpleader action fails to appear. .

■ The arguments advanced by plaintiff in support of its position implicate a host of thorny procedural issues. The method for serving the United States in interpleader actions of this sort is prescribed by § 2410:

> In actions in the State courts service upon the United States shall be made by serving the process of the court with a copy of the complaint upon the United States attorney for the district in which the action is brought or upon an assistant United States attorney or clerical employee designated by the United States in writing filed with the clerk of the court in which the action is brought and by sending copies of the process and complaint, by registered mail, or

by certified mail, to the Attorney General of the United States at Washington, District of Columbia.

The mere mailing of copies of the summons and garnishment-interpleader pleading in May 1992 to the United States Attorney for this district was, therefore, defective, and service was not properly made upon the United States, as provided under § 2410, until December 1, 1992, when personal service of the Bank's amended answer was first made upon the United States Attorney for the Southern District of Mississippi. *Cf. United States v. Dansby*, 509 F.Supp. 188, 197 (N.D.Ohio 1981) ("By consenting to be sued, ... the United States has required neither that it be named a party in all suits allowable under 28 U.S.C. § 2410(a) nor that service be effectuated in the manner described in 29 U.S.C. § 2410(b)[.] ... At most the service provision directs the appropriate fashion to effectuate service upon the United States when it is named as a party in a suit allowable under 28 U.S.C. § 2410.").

■ While the government argues that it was not required to file an answer to the Bank's interpleader-garnishment action prior to December 1, 1992, the date when it was properly made a party to this suit, plaintiff urges that the government waived any defect in service of process by responding to the May 19, 1992 "service" by removing the action to this court and thereafter participating in these proceedings [8] without raising any objection based on insufficiency of service of process.[9] The government takes the position, though, that as a matter of law, the lack of proper service upon the United States cannot be waived, even though the United States removes a state court action to federal court.

The court has discovered no consensus on the question of whether the government may waive objections to technical defects in service of process. The manner for effecting service of process upon the government under Rule 4(d)(4) of the Federal Rules of Civil Procedure is identical to the manner of ser-

---

**8.** Prior to the December 1, 1992 service of process, the government participated in the entry of a scheduling order in the case.

**9.** The court notes that no explanation has been provided as to why the government was served with process in December 1992, months after it had removed the case to federal court.

vice prescribed by § 2410. The effect of straying from strict compliance with these service provisions is the subject of some disagreement. As one court has observed,

> The provisions of Rule 4(d)(4) effectuate a waiver of the government's sovereign immunity. *City of New York v. McAllister Brothers, Inc.*, 278 F.2d 708, 710 (2d Cir. 1960). Several courts have therefore concluded that strict compliance with Rule 4(d)(4) is mandatory. *Messenger v. United States*, 231 F.2d 328, 330 (2d Cir.1956); *Wallach v. Cannon*, 357 F.2d 557, 559 (8th Cir.1966); *Lemmon v. Social Security Administration*, 20 F.R.D. 215, 217 (D.S.C. 1957). See *Hodge v. Rostker*, 501 F.Supp. 332, 333 (D.D.C.1980). Other courts have held that where the necessary parties in the government have actual notice of a suit, suffer no prejudice from a technical defect in service, and where there exists a justifiable excuse for the failure to serve properly, Rule 4(d)(4) should not be so rigidly construed. *Jordan v. United States*, 694 F.2d 833, 836 (D.C.Cir.1982); *Rollins v. United States*, 286 F.2d 761, 765 (9th Cir.1961); *Piendak v. Local Board No. 5*, 318 F.Supp. 1393, 1396 (W.D.Pa. 1970); *Fugle v. United States*, 157 F.Supp. 81, 84 (D.Mont.1957).

*Williams v. United States*, 558 F.Supp. 66, 67 (E.D.N.C.1983). *See also Zankel v. United States*, 921 F.2d 432, 436–38 (2d Cir.1990) (though Rule 4(d)(4) is "mandatory," and not merely "directory," reasons for adopting *Jordan* exception are persuasive); *Petrie v. Commissioner of Internal Revenue*, 686 F.Supp. 1407, 1411 (D.Nev.1988) (applying exception to suit against government agency). This issue has arisen most often in cases in which the government, either after the time has passed for serving process or after the expiration of an applicable limitations period, has sought dismissal of a complaint against it on the basis of a defect in service, and the courts, it appears, have devised this "exception" as a means of protecting the claims of diligent and unsuspecting plaintiffs. This case, however, presents a far different scenario. The government here does not request dismissal of the case based on a defect in process but rather by asserting the defect in process seeks to be protect its ability to assert its claim to the funds in this action.

One court has explicitly held that the government, like any other party, waives defects in service of process by an appearance. *See Lowndes Bank v. MLM Corp.*, 183 W.Va. 339, 395 S.E.2d 762 (1990). But as the court observed in *Roque v. United States*, 857 F.2d 20, 22 (1st Cir.1988), the view of those courts which have indicated that compliance with provisions relating to service on the United States functions as a condition upon which the government's consent to be sued depends, is "a view which would complicate [a] waiver analysis." The *Roque* court found it unnecessary to decide whether it would take that view. This court, likewise, finds it unnecessary to resolve the issue of whether the government's removal of this case amounted to a waiver of objections relating to defects in service of process. Pretermitting consideration of the parties' arguments on this question, the court rejects the plaintiff's position for a more fundamental reason. That is, even assuming *arguendo*, as plaintiff contends, that the United States waived any objection to the failure of service of process by removing the case to this court, judgment for the plaintiff cannot be predicated on the government's failure to timely assert a claim to the funds since, in the court's opinion, that would be tantamount to awarding plaintiff a judgment against the United States by default.

■ It has been repeatedly held that "[t]he failure of a named interpleader defendant to answer the interpleader complaint and assert a claim to the res can be viewed as forfeiting any claim of entitlement that might have been asserted." *General Accident Group v. Gagliardi*, 593 F.Supp. 1080, 1089 (D.Conn.1984); *Nationwide Mut. Fire Ins. Co. v. Eason*, 736 F.2d 130, 133 n. 4 (4th Cir.1984) ("if all but one named interpleader defendants defaulted, the remaining defendant would be entitled to the fund."); *New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91, 95 & n. 6 (2d Cir.1983) (default of interpleader defendants expedited conclusion of interpleader action by obviating need for judicial determination of answering defendant's entitlement to stake). Thus, an

interpleader claimant may obtain judgment when the remaining claimants have defaulted unless, however, the competing claimant is the United States. That is because Rule 55 of the Federal Rules of Civil Procedure, which governs default judgments, provides that "[n]o judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court."

 Plaintiff, of course, acknowledges that it cannot secure a default judgment against the United States and denies that this is what it is attempting to do. Though perhaps not so in form, the substance of plaintiff's motion strikes the court as a request for judgment by default. What the plaintiff seeks by its motion is a judgment in its favor based on the government's failure to plead entitlement to or to defend a previously asserted claim to the disputed funds. This result will not be permitted. *See Carroll v. Secretary of Health, Educ. & Welfare*, 470 F.2d 252 (5th Cir.1972) (reversing district court's entry of default judgment due to Secretary's failure to file transcript; "Rule 55(e) is designed to prevent a judgment from being entered against the government because of a procedural default....").[10]

### B.

 Plaintiff next argues that it is entitled to receive the funds on deposit in Steel Sales' account with Trustmark because the Hinds County Circuit Court entered a judg-

ment to that effect on April 1, 1992. Plaintiff's position on this point is refuted by Miss.Code Ann. §§ 11–35–41 and 11–35–43 which, when read together, establish that a judgment entered against the garnishee becomes, in effect, a nullity when the garnishee, after entry of the judgment, notifies the court of the claim of another person and interpleads the subject property. If the other claimant appears and asserts a claim to the property, then its claim "shall be tried and determined as other issues," even if a judgment has already been entered for the original claimant. Plaintiff's position is, therefore, without merit.[11]

### C.

Plaintiff maintains, finally, that the issue here is not one of priorities but rather is whether Steel Sales had any interest in the funds in the Trustmark account at the time the IRS attempted to execute on its lien by filing its notice of levy. Plaintiff takes the position that the notice of levy was ineffective since, at the time the IRS filed the notice of levy on Trustmark, the funds in the Steel Sales account had been bound by plaintiff's writ of garnishment and consequently, Steel Sales had no property interest in the funds. And, since the IRS acquires only such rights as the taxpayer possesses, it acquired no interest in the account by virtue of the notice of levy.

 Though federal law is applied to determine the ultimate question of the priori-

---

**10.** Even were the court to find Rule 55(e) inapplicable and to further find that defects in the initial service of process were waived by the government, the court would nevertheless conclude that the government should be permitted to assert its claim to the funds. The situation presented is at least analogous to that presented in the context of default judgments, and it has been repeatedly held that default judgments are not favored by the law in view of the "strong policies favoring the resolution of genuine disputes on their merits." Rather, it is the policy of judicial administration to favor disposition of cases on their merits. *Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir.1980) ("Default judgments are not favored by modern courts, perhaps because it seems inherently unfair to use the court's power to enter and enforce judgments as a penalty for delays in filing"). *See also United States, ex rel. Time Equip. Rental & Sales, Inc. v. Harre*, 983

F.2d 128 (8th Cir.1993); *Bieganek v. Taylor*, 801 F.2d 879 (7th Cir.1986). The government here, by serving its notice of levy and thereafter removing the case to this court, evinced a definite intent to assert a claim to the fund. At worst, it failed to properly pursue its intent by a mere procedural default. Under the circumstances, a resolution of the dispute on the merits is certainly warranted.

**11.** The court would also note that if the United States is not joined as a party "in any civil action or suit described in" 28 U.S.C. § 2410, then any judgment in such an action "shall be made subject to and without disturbing the lien of the United States, if notice of such lien has been filed in the place provided by law for such filing at the time such action or suit is commenced...." 26 U.S.C. § 2475.

ty of federal tax liens as against competing liens, the court looks to state law to determine the legal interest of the taxpayer in the property.

> It has long been the rule that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property ... sought to be reached by the statute." *Morgan v. Commissioner*, 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585, 589 [(1940)].... However, once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's "property" or "rights to property."

*Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). The question, therefore, is whether the plaintiff's filing of its writ of garnishment deprived Steel Sales of a "property interest" in the account and thereby, rendered the subsequently served notice of levy by the IRS ineffective. The answer to this question is provided by *United States v. Mississippi State Tax Commission*, 574 So.2d 613 (Miss. 1990), in which the Mississippi Supreme Court addressed and rejected an argument substantially identical to that presented by the plaintiff in the case at bar.

In that case, Gamco, Inc. was assessed at various times throughout 1984 by the IRS and the Mississippi State Tax Commission for failure to pay taxes. On May 21, 1984, the United States enrolled its federal tax liens with the Clarke County Chancery Clerk's office. Thereafter, on September 7, 1984, the State of Mississippi requested that writs of garnishment be issued on the State Highway Commission, with which Gamco had entered into a construction contract. On February 4, 1985, the lower state court ordered the Highway Commission to withhold Gamco's earnings under the contract until it accumulated sufficient funds to cover the state tax assessments and court costs. Approximately two weeks after that judgment was entered, the United States served a notice of levy on the Highway Commission seeking to collect Gamco's delinquent federal taxes. The Highway Commission sought and was granted leave to interplead the funds.

The lower court concluded that at the time the notice of levy was filed, Gamco did not have an interest in the funds that had been garnished since the State Tax Commission already had a judgment ordering the Highway Commission to pay the garnished funds into the registry of the court. The court, therefore, found the federal tax levy ineffective. The Mississippi Supreme Court reversed, and awarded the funds to the United States. The court found that the federal tax liens were entitled to priority over the state tax liens because the federal tax liens were perfected before the State Tax Commission served its writ of garnishment on the Highway Commission. The court explicitly rejected the State's assertion that Gamco no longer had any interest in the funds due to the judgment of the lower court, stating that "[s]uch a ruling would go against the clear language of § 6323(a) which only gives priority to judgment lien creditors when they are not subject to notice of the federal tax lien." 574 So.2d at 617. The court further rejected the argument that service of a notice of levy by the United States was necessary to establish the priority of its claim:

> The fact that the levy was ineffective, however, does not necessarily mean that the federal tax lien should not be given priority as to the competing state lien. A levy is administrative and the fact that the Highway Commission was not required by § 6332(a) to surrender the funds does not have any effect on the rights of competing liens.

*Id.*[12] In accordance with *United States v. Mississippi State Tax Commission*, this

---

12. 26 U.S.C. § 6332(a) provides:
[A]ny person in possession of (or obligated with respect to) property or rights to property subject to levy or upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.
The lower court in *United States v. Mississippi State Tax Commission* had concluded that "the service of garnishment writs, answer, and judgment ... [was] execution under the judicial pro-

court concludes that under Mississippi law, the government's lien attached to Steel Sales' property interest in the subject funds and that the government's tax lien has priority over the competing claim asserted by plaintiff. Therefore, the court concludes that the government's motion for summary judgment should be granted and that plaintiff's motion for summary judgment must be denied.

For the foregoing reasons, it is ordered that the motion of the United States for summary judgment is granted and the motion of Gulf Coast for summary judgment is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ORDERED.

cess," and that consequently, under § 6332(a), the notice of levy was ineffective and the federal government's lien, therefore, could not have priority. 574 So.2d at 616. The Supreme Court, however, explained:

Without the exception language in § 6332(a), the Commission would be subject to suit for failure to honor the levy if it went ahead and paid the funds to the Circuit Court. *The exception language prevents such suit, but it does not determine the priority of the tax liens.*

*Id.* (emphasis supplied).